Frances W. GRAHAM, Appellant,

v.

HARLIN, PARKER & RUDLOFF, William
J. Rudloff, Maxey B. Harlin, III, William
J. Parker, Max B. Harlin, III, James D.
Bryant, Jerry A. Burns, J. Richard Dow-
ney, Douglas J. Lapidus, Steven D. Dow-
ney, and Larry F. Hinton, Appellees.

Court of Appeals of Kentucky.

Nov. 4, 1983.

Discretionary Review Denied
March 21, 1984.

Rocco J. Celebrezze, Kathryn S. Drake,
Mobley, Zoeller & Celebrezze, Louisville,
for appellant.

Victor W. Ewen, Louisville, James David
Bryant, Bowling Green, Ewen, Mackenzie
& Peden, P.S.C., Louisville, for appellees.

Before HOWARD, McDONALD and DUNN, JJ.

DUNN, Judge.

This appeal arises from the dismissal of a legal malpractice action on the grounds that suit was not filed within the period of limitations.

The appellee, William J. Rudloff, represented the appellant, Frances W. Graham, in an action for dissolution of her marriage. The Decree of Dissolution was entered in November, 1974. It provided for payment to the appellant of "$500.00 per month toward the support of the family."

On August 7, 1980, the Internal Revenue Service declared the payments to be alimony [sic], taxable to Mrs. Graham under 26 U.S.C. § 71(b), and assessed a deficiency against her personal income tax returns for 1975 through 1981 in the total amount of $17,260.56. On October 6, 1980, she petitioned the U.S. Tax Court for a redetermination of the deficiency.

In a hearing on May 11, 1981, in the Warren Circuit Court the following exchange between appellant and appellee's counsel took place:

Q. Other than the conversation you had with Bill Rudloff right after the divorce decree did you have any subsequent conversations with Mr. Rudloff regarding this issue of child support we're dealing with today?

A. Not until after my notice from IRS.

Q. When was that?

A. I'm not sure of the exact date, it was the latter part, in the fall I would say, around November of last year which of course would be 1980.

..... I still owe the tax and as the proceedings went on I found out the reason they were saying this was because of the way the divorce decree was worded, it was all in the wording of the divorce decree and I realized that this was Bill's ..... this was something Bill had taken care of for me and I felt he would be the one to clarify it and straighten it out so I went back to Bill at that time.

As a result of that hearing, the Warren Circuit Court on June 25, 1981, found that the intent of all parties involved had been that the payments were for child support and entered an order amending the original decree nunc pro tunc as of November, 1974, to reflect that the $500.00 per month payments were "for child support of the infant children."

Mrs. Graham argued unsuccessfully in the U.S. Tax Court that the nunc pro tunc order of the Warren Circuit Court retroactively designated the questioned payments as being for child support, and that there was in fact no deficiency due.

The U.S. Tax Court on August 30, 1982, entered an order holding that the nunc pro tunc amendment of the decree of dissolution was contrary to Kentucky law and would not be recognized retroactively for federal tax purposes. It found that the payments were in fact for alimony [sic] taxable to Mrs. Graham, and assessed deficiencies of $1,590.00 for 1975, $1,804.00 for 1976, and $2,093.00 for 1977.

The action which is the subject of this appeal was filed on September 23, 1981, alleging negligence on the part of appellee Rudloff in his representation of the appellant in failing to advise her of the tax consequences of the wording of the original decree and in failing to correct that wording to avoid the taxation of the payments to the appellant.

Summons was issued on September 23, 1981, but was never delivered to the Warren County Sheriff for service. Alias summons was issued and served on March 12, 1982. The defendant-appellee on March 26, 1982, filed a multiple pleading containing a motion to dismiss with prejudice, a motion to strike, and an answer and counterclaim. Among the grounds recited in support of the motion to dismiss was that it was barred by the statute of limitations. It was also pleaded as an affirmative defense in the answer.

The appellee on June 28, 1982 filed another motion to dismiss the action with prejudice relying on KRS 413.245, the applicable statute of limitation for professional mal-

practice, and KRS 413.250, the statute defining when an action commences.

Hearing on the latter motion was had beginning November 22, 1982. The trial court on January 26, 1983, entered its order sustaining appellee's motion to dismiss and ordered the complaint dismissed with prejudice citing as authority both KRS 413.250 and KRS 413.245, *supra,* and *Whittinghill v. Smith,* Ky.App., 562 S.W.2d 649 (1977). It is from this order, designated as being final and appealable and as being one where there was no just reason for delay, that this appeal is brought. We agree with the trial court.

■ KRS 413.245 states that actions for professional malpractice must be brought "within one (1) year from the date of the occurrence or from the date when the cause of action was or reasonably should have been discovered by the party injured." This statute, effective July 15, 1980, is a codification of the rule approved in *Louisville Trust Co. v. Johns-Manville Products,* Ky., 580 S.W.2d 497 (1979), to the effect that in a professional malpractice action a cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct.

It appears from appellant's above recited testimony in the Warren Circuit Court hearing on May 11, 1981, that the date on which she discovered that a wrong had occurred and that it was caused by appellee was in November 1980, after she became aware that the tax deficiency had been assessed against her, and that as the initial tax court hearing for a redetermination went on, she also became aware that the reason was because of the way the decree was worded. It was then she realized the responsibility was appellee's.

■ Perhaps it's true that appellant did not know she had a cause of action at that time, but that is immaterial. The knowledge that one has been wronged and by whom starts the running of the statute of limitations for professional malpractice, not the knowledge that the wrong is actionable. *Conway v. Huff,* Ky., 644 S.W.2d 333 (1982). The trial court was correct in rejecting Mrs. Graham's claim that she first knew she had a right to sue on September 1, 1982, when there was a final determination by the U.S. Tax Court that the nunc pro tunc amendment of the decree was not retroactive for tax purposes. As stated in *Conway, supra,* the running of the statute on appellant's claim began on "the day that she discovered that she may have been poorly or inadequately represented." Although the exact day is not pinpointed in the record, it was, as noted above, no later than November, 1980. Using that date as the day upon which the statute commenced running, the March, 1982, issuance and service of alias summons was clearly beyond the one year period provided by the statute of limitations.

■ Appellant argues that appellee is estopped to raise the defense of the statute of limitations, since her attorney's direction to the clerk that summons not be served upon filing the complaint was at the request of appellee's insurance carrier. The holding to the contrary in *Whittinghill v. Smith, supra,* is dispositive of that contention.

In that case, a personal injury action filed on the 365th day after the accident, settlement negotiations had been underway and counsel directed the clerk not to deliver the summons for service. Citing *Louisville and N.R. Co. v. Little,* 264 Ky. 579, 95 S.W.2d 253 (1936), this Court stated at page 255:

> ... causing a summons to be issued by the clerk conditionally is not causing it to be issued in good faith. An intention to postpone starting the litigation is thereby evidenced. All the authorities are to the effect that the cause of action is not commenced until there is a bona fide intention to have the summons filled out and signed by the clerk, accompanied by bona fide, unequivocal intention to have it served or proceeded on presently or in due course or without abandonment. Action and intention combined constitutes the commencement of the suit, because a

summons filled out and signed with no intention of having it served is altogether inoperative . . .

Of course, though it has been postponed, when a summons is actually served or put in line of service, the mere intention to have it issued is translated into a good-faith intentional action. But if the suspension is not closed before the right to sue ends, it must be regarded that the plaintiff slumbered through the time prescribed.

Similarly, in the instant case the intention to issue the service of process was not reached until the limitation period had expired; thus, appellant's action was barred.

■ Appellant also seemingly contends that the trial court was confined to the narrow rules applicable to the usual motion to dismiss under CR 12.02. She cites *Boone v. Gonzalez,* Ky.App., 550 S.W.2d 571 (1977); *Henkin, Inc. v. Berea Bank and Trust Company,* Ky.App., 566 S.W.2d 420 (1978); *White v. Brock,* Ky., 487 S.W.2d 908 (1972); and *Kellerman v. Vaughan,* Ky., 408 S.W.2d 415 (1966). These cases, however, lend support to the trial court's position.

Unlike in the case of an ordinary motion to dismiss where the affirmative defense was not pleaded, in this case the defendants-appellees on March 26, 1982, filed a motion to dismiss and an answer in which they affirmatively pleaded the statute of limitations. Long after that, on June 28, 1982, they filed a second motion to dismiss based on the statute of limitations. It is from the trial court's order sustaining the latter motion that this appeal is prosecuted. In the hearing on this motion the trial court received evidence beyond the pleadings, including a transcript of the above recited verbal exchange between appellant and appellee's counsel at the hearing on May 11, 1981, thus in effect treating the motion as one for summary judgment. *McCray v. City of Lake Louisvilla,* Ky., 332 S.W.2d 837 (1960); 6 W. Clay, *Kentucky Practice,* CR 12.02, Comment 9 (3rd ed. 1974). It obviously concluded, as we do, that from the pleadings and the facts elicited at the hearing there was presented a situation that,

with respect to material facts, there could be no issue that would entitle the appellant to relief from the statute of limitations under these or any other facts which appellant could prove. *White v. Brock, supra.* Various aspects of this point of view are in fact also supported by *Boone, Henkin,* and *Kellerman, supra.*

The order of the trial court dismissing appellant's complaint is AFFIRMED, and this case is REMANDED for proceedings on the appellee's counterclaim.

All concur.