**Ardell LOOMER, Appellant,**

v.

**Brenda RITTINGER, Appellee.**

**Brenda RITTINGER, Cross–Appellant,**

v.

**Ardell LOOMER, Cross–Appellee.**

**Nos. 88–CA–2227–MR, 88–CA–2285–MR.**

Court of Appeals of Kentucky.

Dec. 22, 1989.

Withdrawn and Reissued May 4, 1990.

Monica R. Bohlen, Simon, Namanworth & Bohlen Co., L.P.A., Cincinnati, Ohio, for appellant/cross-appellee.

Michael L. Williams, Covington, for appellee/cross-appellant.

Before McDONALD, MILLER and REYNOLDS, JJ.

McDONALD, Judge.

This is an alienation of affections case from the Kenton Circuit Court which resulted in a directed verdict for the defendant, Brenda Rittinger. Besides the appeal there is a cross-appeal which addresses the proper statute of limitations. We agree with the cross-appellant that this case should have been dismissed as time-barred.

Ardell Loomer and Weston Loomer were married in 1958. In December of 1981 Weston commenced an adulterous relationship with Brenda Rittinger, which the appellant discovered the following May. The Loomers attempted to patch up their differences, but sometime in September of that year Ardell realized that her husband was still involved with Brenda. The Loomers separated in December, and Weston filed for divorce. This became final on March 9, 1983. Apparently Brenda and Weston terminated their relationship in October, 1983.

It is undisputed that the one-year statute of limitations enumerated in KRS 413.140(1)(c) for criminal conversation actions applies. *Skaggs v. Stanton*, Ky., 532 S.W.2d 442 (1975). Ardell argues that her criminal conversation action, at least, was timely. Her argument is premised on the notion that the fact of adulterous sexual conduct is, by itself, sufficient to establish a cause of action for criminal conversation. It is undisputed that Weston and Brenda continued their relationship until some months after the Loomers divorced. The appellant therefore maintains that the criminal conversation was ongoing until March of 1983, when the Loomers' divorce became final, and that the statute should begin to run from that date.

We disagree. Divorce by itself has never been considered a pivotal event in alienation of affections cases from this jurisdiction. *See Stoll v. Plarr*, Ky., 322 S.W.2d 712 (1959). Furthermore, we disagree with the appellant's premise. *Skaggs v. Stanton* merged several causes of action into one tort, that of "interference with the marriage relation," *supra* at 443, and explained that "criminal conversation, enticement and alienation of affections are no more than *methods* by which this tort may be committed." *Id.* (emphasis added). Thus, "criminal conversation"—or in more modern parlance adulterous sexual relations—is no longer a distinct tort. The "interference" which is the basis of this tort had been accomplished long before the Loomers divorced.

This, of course, merely begs the question of when the statute does begin to run. The most recent Kentucky case designates "the last act prior to discovery" or "the last wrongful act." *Plummer v. Summe*, Ky. App., 687 S.W.2d 543, 544, 545 (1984). According to *Plummer*, the statute "would run from that date, even though the activity was not discovered until a later time." *Id.* at 545. We consider this a peculiar holding. In general, "[d]eliberate concealment by a defendant of the plaintiff's cause of action will toll the statute of limitations." *Lashlee v. Sumner*, 570 F.2d 107, 110 (6th Cir.1978); *see also Miller v. Thacker*, Ky., 481 S.W.2d 19, 22 (1972). A blanket cut-off such as that proposed in *Plummer* would merely serve to reward the successful deceiver.

Concealment, however, is a minor consideration in the present case. Ardell knew of her husband's illicit relationship as early as May of 1982. Concededly we would not expect one in her position to instantly run out and file an interference action. But by September, when she learned that the relationship had been renewed, Ardell clearly had knowledge that her marriage had been interfered with. We see no reason why the statute should not begin to run when the plaintiff knows, or has reason to know, that the tort has

been accomplished.[1] Ardell did not file until December of 1983 an action which had accrued more than a year earlier. This rendered her action untimely as a matter of law.

Appellant also maintains that the cross-appeal should have been dismissed because the cross-appellant, having received a directed verdict, was not aggrieved by the judgment. However, we think the merits of the cross-appeal were properly before us; inasmuch as our decision renders the appellant's arguments moot, it precludes any relief which might be to the appellee's detriment.

Although the trial court denied the appellee's motion to dismiss, the directed verdict achieved what we consider the correct result, although by a different path than we would have chosen. Therefore, we affirm the judgment of the Kenton Circuit Court.

REYNOLDS, J., concurs.

MILLER, J., concurs by separate opinion.

MILLER, Judge, concurring:

I concur. I express doubt that the tort sued upon has a valid premise in modern society.

---

1. *See Strata v. Patin,* 545 So.2d 1180 (La.App. 1989), applying this rule; *see also Graham v. Harlin, Parker & Rudloff,* Ky.App., 664 S.W.2d 945, 947 (1983) (legal malpractice): "The knowledge that one has been wronged and by whom starts the running of the statute of limitations"; cited in *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 641 (6th Cir.1986) (personal injury).