James R. HAZEL, Jr., Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. C93–0184–BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Sept. 30, 1994.

Brad Coffman, Coffman & Beck, Stephen L. Hixson, Hixson, Downey & Travelsted, Bowling Green, KY, for plaintiff.

William H. Fulton, Woodward, Hobson & Fulton, Louisville, KY, James P. Feeney, Peter M. Kellett, Feeney, Kellett & Wienner, Bloomfield Hills, MI, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

■ The Court must decide whether Defendant is entitled to protection of the one year statute of limitations applicable to products liability actions. In considering the difficult issues raised, the Court has received superb assistance from the fine memoranda and oral argument of counsel. Applying existing Kentucky law, Plaintiff's claim is barred. For Plaintiff to prevail this Court must conclude that Kentucky courts would expand the limited equitable tolling doctrine to encompass the circumstances of this case. The Court predicts that they would not do so. Therefore, for the reasons stated herein, Defendant's motion to dismiss is sustained and the complaint is dismissed with prejudice.

### I.

On April 8, 1988, Plaintiff, then weeks shy of his seventeenth birthday, was driving a GM pickup truck, when he lost control of his steering while passing another vehicle on a two lane highway. The truck overturned and collided with a utility pole, apparently rupturing the fuel tank. Plaintiff was conscious and releasing his seat belt when, six (6) to twelve (12) seconds later, fire exploded from the released fuel and consumed the cab of the truck. Rescuers were able to pull Plaintiff from the truck, but only after he sustained second and third degree burns over more than half his body. Plaintiff had the truck towed to his backyard for inspection and noticed that the clearly visible outside fuel tanks had burst open during the crash. Plaintiff does not dispute that he was aware that the crash dislodged the gas tank from its mounting brackets and tore it from the filler neck and cap, causing the gasoline to escape and then catch fire.[1] He did nothing further to pursue his cause of action.

Plaintiff's parents had purchased the 1978 model, GM pickup truck in 1985. It was equipped with a fuel tank positioned outside the chassis. Prior to 1989, the "side-saddle" fuel tank design had been the subject of at least 100 state and federal lawsuits. All of these actions were either dismissed or were settled with confidentiality agreements keeping the contents private. Apparently, *Moseley v. General Motors,* 90v6276, was the first case of its kind to go to trial. In February, 1993, a Fulton County, Georgia jury in that case awarded the parents of a crash fatality over $101 million, much of it in punitive damages.[2] Months prior to this verdict, in November, 1992, NBC's "Dateline" brought to the nation's attention the crashworthiness of GM's pickup trucks equipped with side-saddle fuel tanks.[3]

After watching this television program, Plaintiff surmised that GM's faulty design was responsible for his own car fire in 1988, which was induced by the fuel tank rupture. Plaintiff then, for the first time, consulted an attorney about his accident. Plaintiff's counsel, retained shortly thereafter, conducted discovery for ten months (the Georgia verdict falling in the interim) and filed this action eleven months after Plaintiff actually suspected that he had a right of action. All told, this action commenced five-and-a-half years

---

1. Mr. Hazel has not explained clearly the sequence of events in regard to what he knew about the cause of the explosion and when he knew it. However, his own statements in the pleadings could have come only from information in his possession or easily available to him at the time of the accident, such as his actual observations and review of crash photos. Mr. Hazel did not consult an automotive engineer or any other expert to investigate the cause of the explosion. He had the truck destroyed two (2) or three (3) months after the accident.

2. The jury verdict has been subsequently reversed.

3. Later, this program itself was the subject of controversy when it was disclosed that NBC used tiny explosive devices to recreate fires upon impact. The network did this because it believed that such fires actually occurred in many instances.

after the date of injury or four-and-a-half years after Plaintiff reached the age of majority.[4]

## II.

■ Limitations upon actions are creatures of statute that limit the time in which a plaintiff may bring suit *after a cause of action accrues. McCollum v. Sisters of Charity*, 799 S.W.2d 15, 18 (Ky.1990).[5] The Kentucky General Assembly might impose no limitations on a cause of action or it might provide specific statutory exceptions in the event of fraud or other reprehensible conduct.[6] Limitations are designed chiefly to bring a finality to the legal process. In doing so, limitations also bring finality to legal exposure. Thus limitations act arbitrarily, sometimes extinguishing otherwise viable claims and at other times extinguishing speculative claims. The limitations period for Plaintiff's action is one year. Ky.Rev. Stat.Ann. § 413.140(1).

■ Kentucky courts have acknowledged that an action may not accrue until a plaintiff has knowledge of sufficient facts to state a cause of action. Under the "discovery rule," a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct. *Perkins v. Northeastern Log Homes*, 808 S.W.2d 809, 819 (Ky. App.1991); [7] *Louisville Trust Co. v. Johns–Manville Products*, 580 S.W.2d 497, 501 (Ky. 1979) (citation omitted). Therefore, a product liability plaintiff has one year, after the date he becomes aware of his injury and the offending instrumentality, to file suit. Kentucky courts have allowed tolling of the statute where such circumstances exist, i.e., when "the injury and the discovery of the causal relationship do not occur simultaneously." *Id.* That is not our case, however.

## III.

In our case, Plaintiff knew that a fuel-fed automobile fire caused his injuries. In other words, the injury and the instrumentality causing the injury were obvious. Thus, though Plaintiff surmised all the relevant facts, he may not have perceived that a design defect was the cause of his injury or that he could maintain a legal action against Defendant.[8] A statute of limitations, however, begins to run from the date of discovery of the injuries and what or who was responsible for them, not from the date the plaintiff discovered that he had a cause of action. *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1983). Had he consulted an attorney, Plaintiff undoubtedly could have learned about that more precise mechanism or defect, if one existed.[9] Thus, under Kentucky's dis-

---

4. Due to the fact that Plaintiff was under the age of majority, the statute was tolled until he reached the age of eighteen (18) years. Ky.Rev. Stat.Ann. § 413.170(1).

5. The Court considers here a statute of limitations, not a statute of repose, which potentially bars a plaintiff's suit before the cause of action arises. *McCollum*, at 18. Consequently, the Kentucky constitutional provisions guaranteeing "open courts" are not implicated. Nor can this Court foresee any other provision of the Kentucky constitution which may independently apply to consideration of when Plaintiff's cause of action might accrue or arise under KRS 413.140.

6. The legislature has seen fit to enact specific legislation governing the accrual of medical malpractice actions. KRS 413.140(2). No such special provisions apply to personal injury or product liability actions.

7. *Perkins* discusses, among other things, the evolution of Kentucky's limited discovery rule from its beginnings in *Tomlinson v. Siehl*, 459 S.W.2d 166 (Ky.1970) and *Hackworth v. Hart*, 474 S.W.2d 377 (Ky.1971).

8. It is immaterial whether the plaintiff knew he could sue for the wrong at the time. *Graham v. Harlin, Parker & Rudloff*, 664 S.W.2d 945, 947 (Ky.App.1983). To hold otherwise would vitiate the statute of limitations by allowing a plaintiff to plead a stale case merely because he did not see "the right lawyer" at the appropriate time, or by allowing a plaintiff to endlessly shop for a lawyer until he found one willing to take his case. *Drake v. B.F. Goodrich Co.*, 782 F.2d 638, 641 (6th Cir.1986).

9. As stated before, at least one hundred similar, timely lawsuits were filed against GM subsequent to 1977. Many other hundreds have filed lawsuits contesting the location and design of fuel tanks in other automobiles. Thus, the potential liability of automobile manufacturers in general and GM in particular for these kinds of accidents has not been a secret.

covery rule Plaintiff's cause of action accrued at the time of the accident.

These facts do not distinguish our case from many others in which suit is timely filed. Although a plaintiff cannot be expected to know or determine on his own the precise mechanism which caused an accident or an injury, certain events and observations should put one on notice that something unusual occurred. Thus, for obvious reasons Plaintiff does not premise his argument upon an assertion that his cause of action was, in fact, concealed. Such an assertion would be untrue.

■ For purposes of the pending motion to dismiss, the Court must assume Plaintiff's assertions to be true: that Defendant has fraudulently concealed evidence which would tend to demonstrate a fuel tank design defect, and that Defendant took steps to keep confidential all settlements of similar cases, all of which prevented wide circulation of news of the fuel tank explosion accidents and their alleged cause; and that Defendant took other steps to minimize publicity concerning fuel-fed fires in GM trucks.[10] Therefore, the issue presented here is whether the statute of limitations may be tolled in a products liability action where a defendant fraudulently concealed evidence of liability, where sufficient facts were apparent from which a complaint could have been filed, and where the plaintiff took no steps on his own behalf to bring a claim within the limitations period.

This Court must predict whether Kentucky courts would expand their current doctrine to encompass these facts.

## IV.

■ Under Kentucky law, Defendant would be estopped from asserting limitations if it has induced Plaintiff's failure to bring suit by fraudulent concealment. *Burke v. Blair*, 349 S.W.2d 836, 838 (Ky.1961). To constitute fraudulent concealment Defendant's action must have prevented Plaintiff from inquiring into the action, or eluded Plaintiff's investigation, or otherwise mislead the Plaintiff *Burke*, at 838. Furthermore, Plaintiff is under the duty to exercise reasonable care and diligence to discover whether he has a viable legal claim. *Id.* In such a case, the limitations period begins to run when the injured person learns of the wrongdoer's unlawful act. *Lashlee v. Sumner*, 570 F.2d 107, 110 (6th Cir.1978).

■ In sum, concealment sufficient to toll a statute of limitations is concealment of the cause of action itself.[11] Perhaps it is too elementary to say that the essence of fraudulent concealment requires concealment as well as fraud. Even if Defendant did conceal evidence of the gas tank's design defect, that would not distinguish our case from almost every products liability action in which defendants know or possess potentially harmful information that is withheld until litigation compels disclosure. Here, evidence of the cause of action was clearly discoverable from analysis of the instrumentality, and Plaintiff

**10.** When reviewing a motion to dismiss, the Court must believe the evidence of the non-movant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). It is worth noting here that to this Court's knowledge no jury verdict has been entered against GM, other than the one reversed in *Moseley*. Nor has the United States government apparently taken any action to recall the side-saddle gas tank GM trucks. *See* 15 U.S.C. § 1412(b).

**11.** In *Lashlee*, the Sixth Circuit considered KRS 413.190, which provides that a statute of limitations is tolled by defendant's deliberate concealment of plaintiff's cause of action or its failure to disclose a wrongful act. There the defendant concealed the actual fact of the wrong, the defamation itself. By concealing the publication of

the false statement, defendant concealed an essential element of the cause of action. 570 F.2d at 109. Consequently, in the words of *Tomlinson*, an issue of fact arose as to whether the nature of the injury was "inherently unknowable." *Id.* at 167. Similarly, in *St. Clair v. Bardstown Transfer Line*, a defendant concealed the critical information of his identity, thus denying plaintiff the knowledge necessary to file a cause of action. 310 Ky. 776, 221 S.W.2d 679 (1949).

On this basis, the Court concludes that the general language in *Lashlee* describing that "the defendant[s] had a duty to disclose his wrongful act to the person injured by it" does not apply broadly to any kind of attempted concealment. *Id.* at 110. By no stretch of the imagination was Plaintiff's claim here "inherently unknowable," nor was an essential element of Plaintiff's claim concealed.

failed to examine the instrumentality. If Defendant concealed information, its actions did not prevent this Plaintiff from learning enough to assess whether he should file a complaint.

■ The fraudulent concealment doctrine requires that a plaintiff exercise due diligence. *Lashlee,* 570 F.2d at 110. An injured party has an affirmative duty to use diligence in discovering his cause of action within the limitations period. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6 Cir.1975). "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim." *Id.* In other words, "the means of knowledge are the same thing in effect as knowledge itself." *Id.* (quoting *Wood v. Carpenter,* 101 U.S. 135, 143, 11 Otto 135, 143, 25 L.Ed. 807 (1879)). To find for Plaintiff the Court must conclude that under the circumstances of this case the diligence that is "due" is no diligence. In effect, Plaintiff asks the Court to ignore the fact that he did little, if anything, to pursue his rights. The Court does not believe that Kentucky courts either should or would jettison this important component of the fraudulent concealment test.

## V.

■ Because neither the discovery rule nor the similar fraudulent concealment doctrine will toll the limitations period for this Plaintiff, the question now presented is whether Kentucky courts would expand the discovery rule or would formulate some other equitable tolling provision to encompass the facts of this case.

As an automobile manufacturer, Defendant had a statutory duty to notify the government and its purchasers of any defect in its product. *See* 15 U.S.C. § 1411.[12] So long as Defendant failed to do so, Plaintiff argues, under the circumstances of this case a lay person could not appreciate, in the absence of negative information pursuant to Section 1411, that a design defect may have caused his injuries. The federal statute does not impliedly or expressly modify any state statute of limitations. Nevertheless, Plaintiff contends that the statute of limitations is tolled because he justifiably relied upon Defendant's nondisclosure and thus Defendant is estopped from raising limitations as a defense.

■ Consumers are at a disadvantage in these circumstances. They have less knowledge about fuel tank designs than those who design them. For this reason, courts and legislatures traditionally have moved to protect consumers by allowing products liability actions to proceed on theories, such as "failure to warn" and "strict liability," that do not require the difficult proof of actual negligence. *See, e.g., Hutt v. Gibson Fiber Glass Products, Inc.,* 914 F.2d 790 (6th Cir.1990) (holding that a manufacturer's failure to warn when there is a duty to do so may give rise to an action in strict liability as well as negligence); *Kroger Co. v. Bowman,* 411 S.W.2d 339 (Ky.1967) and *Ulrich v. Kasco Abrasives Co.,* 532 S.W.2d 197 (Ky.1976) (holding that strict liability does not depend on negligence).[13]

Plaintiff asks this Court to do what Kentucky courts have not yet done, namely to extend the protection to consumers a step further, to toll the statute of limitations based upon Defendant's duty to inform consumers of a dangerous defect.[14] Defendant's

**12.** § 1411 provides: "If a manufacturer obtains knowledge that any motor vehicle ... manufactured by him contains a defect and determines in good faith that such defect relates to motor vehicle safety ... he shall furnish notification to the Secretary and to owners, purchasers, and dealers ... and he shall remedy the defect or failure ..."

**13.** *Also see Bryant v. Tri–County Elect. Membership Corp.,* 844 F.Supp. 347 (W.D.Ky.1994), in which this Court was willing to expand the scope of strict liability to vindicate Kentucky's longstanding policies of protecting consumers and spreading risk to manufacturers among other

reasons. Risk spreading and consumers protection, however, are not primary or perhaps even legitimate purposes in the context of statutes of limitations.

**14.** Though Kentucky courts have not yet addressed Plaintiff's argument, other state courts have considered a defendant manufacturer's failure to comply with its duty to warn of defects as a ground for equitable tolling of the statute of limitations. Various courts have used the terms "equitable estoppel" and "fraudulent concealment" differently, sometimes interchangeably, in the context of a manufacturer's reporting duties,

failure to do so, Plaintiff asserts, is not the basis of a separate cause of action, rather it tolls the statute. If the Court accepts this proposition without compromise, however, the statute could be tolled for any length of time in every case of failure to warn. Plaintiff concedes that the tolling must be limited by a standard of reasonableness and advocates tolling the statute until such time as a reasonable consumer would no longer be lulled into false sense of security or so long as a reasonable person would not otherwise suspect the defect. Plaintiff's proposal creates the type of subjective and nebulous standard which the legislature specifically designed statutes of limitations to counteract.

Inherent in the tolling analysis, which plaintiff has asked this Court to expand, is the requirement that plaintiffs take reasonable actions on their own behalf. Suppose Plaintiff hired an expert who determined that the fuel tanks were defectively designed, but did not file suit because defendant had not filed a notice of defect. Would anyone argue that the statute be tolled? Suppose Plaintiff

had consulted an attorney. Could the attorney have advised, "So long as General Motors has not given you notice of its defect then the statute of limitations will be tolled." No attorney would give such advice. No Court would accept such an argument. For this reason even if Kentucky courts adopted an expanded equitable standard, they would retain the traditional "due diligence" requirement.

## VI.

■ Much has been made of the litigation explosion in our country. It has achieved for us many benefits, at costs that while sometimes questioned, are generally found acceptable. Among other things, statutes of limitations are the legislature's way of confining the field within which litigation may explode. Clearly we should not stand on the statute in the face of clear injustice. After all, equity is the idea of justice which contravenes the written law.[15] Because the Court is asked to create a rule for not only this Plaintiff, but all

---

leading to some confusion over the standards governing this area of law. To some extent, though the labels are fungible, certain basic principles apply similarly.

The courts seem to agree that a plaintiff must act with due diligence, making efforts to ascertain whether he has a cause of action. *See, e.g., Palmer,* 838 P.2d at 1250; *Gregory v. Honeywell, Inc.,* 835 F.2d 181 (8th Cir.1987) (holding that because the alleged water heater defect and claim would be readily apparent from explosion and resultant injury, plaintiff could not succeed on the estoppel argument); and *Miller v. A.H. Robins Co., Inc.,* 766 F.2d 1102 (7th Cir.1985) (holding that no fraudulent concealment existed because plaintiff had knowledge of injury and possible cause and due diligence would have revealed other pending timely lawsuits for same claim).

The degree of diligence that a plaintiff must exercise to estop a defendant from asserting a statute of limitations defense seems to vary according to the defendant's conduct, which allegedly induced the plaintiff to refrain from filing an action. For example, in New York, when the basis of estoppel is an actual misrepresentation by the defendant, the plaintiff must allege that his justified reliance upon the misrepresentation caused him to miss the deadline imposed by the statute of limitations. *Jordan v. Ford Motor Co.,* 73 A.D.2d 422, 423–24, 426 N.Y.S.2d 359 (1980). On the other hand, when a plaintiff claims that concealment without actual misrepresentation prevented him from filing an action within the

limitations period, the courts have invoked estoppel where there was a fiduciary relationship which obligated the defendant to inform plaintiff of facts underlying the claim. *Id.* at 424, 426 N.Y.S.2d 359.

Though these examples are not our case, the general explanation helps to reconcile somewhat the differing conclusions reached by state courts that have addressed the issue of whether a manufacturer's failure to warn of defects tolls the limitations period. *See Palmer v. Borg–Warner,* 838 P.2d 1243, 1250 (Ak.1992) (reasoning that when a manufacturer makes false representations resulting in an absence of adverse information from regulatory agencies, a potential plaintiff may reasonably rely on that absence of information in concluding that a product is safe, thus giving rise to estoppel if the plaintiff pursued the claim diligently); *Sellon v. General Motors Corp.,* 571 F.Supp. 1094, 1100 (Del.1983) (holding that any duties arising pursuant to § 1411 and the common law duty to warn do not create a fiduciary relationship sufficient to require a defendant to disclose facts known to him which may underlie a plaintiff's cause of action); *Siebert v. General Motors Corp.,* 853 S.W.2d 773 (Tex.App. 1993) (stating that although a manufacturer is under a duty to adequately warn of foreseeable inherent dangers attendant upon the proper and intended use of its products, the duty to warn is unrelated to the duty to disclose a cause of action).

**15.** Aristotle, Rhetoric, circa 322 B.C.

others who follow him, it is fitting to consider the broader ramifications and fairness of this decision.

Does our failure to expand that field today cause an inequity or injustice? By declining to allow litigation to encompass a larger field, the socially redeeming aspects of products litigation are not deterred. Ongoing administrative and civil actions assure the public that General Motors will be held accountable for its conduct and be given an incentive to improve its designs. Will the defendant escape responsibility for its concealment? No, because in every case timely filed, there exists the possibility of an award of punitive damages if Defendant's conduct is judged outrageous. In every case timely filed and dismissed, plaintiffs may refile on the basis of fraud upon the Court, if sufficient facts exist. Civil penalties may even be appropriate.

The ultimate question is whether the statute should be equitably tolled to benefit this individual Plaintiff and to penalize Defendant for its alleged conduct. One cannot ignore the subconscious desire to find a way of punishing those who are alleged to have done wrong. The purpose of tolling mechanisms for statutes of limitations, however, is not penal. This will neither be the first nor last occasion in which a statute of limitations has barred an otherwise potentially meritorious claim. Neither our profound sympathy for Plaintiff nor our disapproval of Defendant's alleged tactics merits creating a new rule that, itself, is likely to cause as much injustice as good and is certain to create more confusion than clarity.

The Court is entering an order consistent with this Memorandum Opinion.

### ORDER

The case is before the Court on Defendant's motion to dismiss. Having entered the accompanying Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss is SUSTAINED and the complaint is DISMISSED with prejudice.

This is a final and appealable order and there is no just reason for delay.