**Sidney VANNOY, Appellant,**

v.

**Dr. Joseph A. MILUM, M.D. and Multicare Specialists, P.S.C., Appellees.**

No. 2004–CA–001073–MR.

Court of Appeals of Kentucky.

Aug. 26, 2005.

---

Daniel N. Thomas, Hopkinsville, KY, for appellant.

C. Thomas Miller, James A. Sigler, Paducah, KY, for appellee.

Before BUCKINGHAM, JOHNSON, and MINTON, Judges.

## OPINION

BUCKINGHAM, Judge.

Sidney Vannoy appeals from a summary judgment entered by the Hopkins Circuit Court dismissing his medical malpractice complaint against Dr. Joseph A. Milum and Multicare Specialists, P.S.C. The issue concerns whether the circuit court correctly ruled as a matter of law that the one-year statute of limitations had expired prior to Vannoy filing his complaint. More specifically, the issue involves the applicability of the discovery rule and when Vannoy's cause of action accrued. Because we conclude that the circuit court correctly awarded summary judgment to Dr. Milum and Multicare Specialists, we affirm.

Dr. Milum was employed by Multicare Specialists, P.S.C., and he served for a period of time as Vannoy's treating physi-cian. In April 1998, Vannoy was hospital-ized for a foot infection. In order to treat what was diagnosed as a foot ulcer, Dr. Milum, after consulting with other physi-cians, elected to prescribe the antibiotic gentamicin. The gentamicin therapy was initiated during Vannoy's hospitalization, and he continued with it through a home health care provider after being dis-charged.

Throughout the treating period, lab tests were done to provide figures on the various chemical levels within Vannoy's body. The results of these tests were forwarded to various physicians, including Dr. Milum, in order to allow them to moni-tor the effect the gentamicin had on Van-noy.

On May 26, 1998, Vannoy suffered dizzi-ness while at physical therapy at the hospi-tal. He was immediately taken to the hospital emergency room, and the emer-gency room physician called Dr. Milum to inform him of the problem. Dr. Milum saw Vannoy three days later for an office visit, and he elected to continue the gen-tamicin therapy. Vannoy was allowed to stop the therapy on June 10, 1998, after a determination was made that the foot ulcer had been resolved.

Vannoy continued to suffer thereafter from dizziness and balance problems. In following up on these symptoms, he under-went tests that established he had vestibu-lar damage to his middle ear. Dr. Milum, as well as several specialists to whom Van-noy was referred, attributed the harm, at least in part, to the use of gentamicin. Throughout the remainder of 1998, Vannoy consulted with various physicians in an attempt to resolve his continued problems from the vestibular damage.

During late 1998 and early 1999, Vannoy obtained copies of his medical records from the various places at which he had

received treatment. In the spring of 1999, he had his wife contact a Madisonville attorney, Wendell Holloway, and in April 1999 Vannoy's medical records were given to Holloway for his review. When asked why they took the records to Holloway, Vannoy's wife stated in her deposition that:

> I am not sure how to answer that; like I said, I just—I didn't—I just—I didn't know if we even had a case about—from anybody, no claim for nothing. I wanted him to just look into all these medical records and just see if he can come up with anything that would help us showing that—that any—that the medicine was wrong, or anything was wrong.

Vannoy met with Holloway on September 10, 1999. While the Vannoys characterized the meeting as being focused on Vannoy's Social Security disability claim, Holloway testified that he specifically remembered discussing the costs of medical experts if a lawsuit were pursued. Holloway further testified that he felt the Vannoys wanted, but did not receive, any encouragement from him concerning a possible lawsuit. Subsequently, Vannoy's medical records were picked up from Holloway's office.

In April 2001, Vannoy's daughter discovered a website for persons suffering from vestibular damage. The Vannoys followed up on the information their daughter had discovered, and they contacted Lynn Brown of Pell City, Alabama. Brown had developed vestibular damage as a result of gentamicin therapy, and she recommended them to Jerry Campbell, an attorney in Vicksburg, Mississippi, whom she had assisted in a separate gentamicin case.

The Vannoys got in touch with Campbell later that month, and on April 30, 2001,

Campbell informed the Vannoys that in his opinion Vannoy had a medical malpractice claim against Dr. Milum and Multicare Specialists. On March 4, 2002, Vannoy filed a civil complaint in the Hopkins Circuit Court against Dr. Milum and Multicare Specialists.

Following the completion of discovery, including depositions, Dr. Milum and Multicare Specialists filed a motion for summary judgment, arguing that the statute of limitations barred Vannoy's claims. On May 19, 2004, the circuit court granted the summary judgment motion. The court stated, "The Court concludes as a matter of law that at least by that date, September, 1999, a reasonable person would be under the obligation to inquire as to the poor result from the gentamicin therapy which would include the medical care provided by Dr. Milum. The complaint in this case, filed March 11, 2002, was thus not timely."

In reaching this conclusion, the court noted it was undisputed that Vannoy was aware by the summer of 1998 that the source of his harm was related to the gentamicin therapy. Further, the court noted that Vannoy had gathered his medical records and taken them to Holloway for review to determine, in the words of Vannoy's wife, "if the medicine was wrong." Vannoy then timely appealed from the entry of the summary judgment order by the circuit court.

In Kentucky, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR [1] 56.03. "The record must be viewed in a light

---

1. Kentucky Rules of Civil Procedure.

most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991). "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.*

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). "There is no requirement that the appellate court defer to the trial court since factual findings are not at issue." *Id.*

KRS [2] 413.140(1)(e) provides that there is a one-year statute of limitations for the filing of negligence or malpractice claims against physicians. In connection with the one-year statute of limitations, there is a discovery rule which addresses when the cause of action shall be deemed to have accrued. That statute states:

> In respect to the action referred to in paragraph (e) of subsection (1) of this section, the cause of action shall be deemed to accrue at the time the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within five (5) years from the date on which the alleged negligent act or omission is said to have occurred.

KRS 413.140(2).

Relying on the discovery rule, Vannoy argues that the one-year statute of limitations did not begin to accrue until April 30, 2001. That was the date his attorney, Campbell, told him he had an actionable claim against Dr. Milum. Vannoy acknowledges that he knew his dizziness was caused, at least in part, by the gentamicin therapy, but he claims that he did not know his dizziness was caused by Dr. Milum's failure to properly monitor the gentamicin medication after receiving notice from the emergency room doctor of Vannoy's reaction and Dr. Milum's failure to deviate from the gentamicin therapy thereafter. Vannoy argues that this knowledge was required to trigger the statute of limitations, and he relies on the cases of *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709 (Ky.2000) and *Imes v. Touma*, 784 F.2d 756 (6th Cir.1986).

Dr. Milum and Multicare Specialists counter by asserting that the knowledge required under the *Wiseman* and *Imes* cases is not that a person has an actionable negligence claim. Rather, they argue that the statute of limitations began to accrue once Vannoy knew, or by acting with reasonable care should have known, that he had been harmed and that Dr. Milum's conduct may have caused that harm. They note that it is undisputed that Vannoy knew in mid–1998 that his vestibular damage was caused, at least in part, by the gentamicin therapy. In addition, they note that it is undisputed that by the spring of 1999, Vannoy had gathered all his medical records and had taken them to an attorney (Holloway) for review. Finally, Dr. Milum and Multicare Specialists argue that it is undisputed that in September 1999 the Vannoys met with Holloway to see if the medicine was wrong. Based on these undisputed facts, they argue that the one-year statute of limitations began to accrue no later than September 1999.

Vannoy's argument that the statute of limitations does not begin to accrue until he learned he had an actionable claim is

2. Kentucky Revised Statutes.

without merit. In *Conway v. Huff,* 644 S.W.2d 333 (Ky.1982), the Kentucky Supreme Court, in a legal malpractice case, analogized the facts in that case to facts in a hypothetical medical malpractice case as follows:

> Does the statute start to run when the surgery patient discovers the sponge or when an attorney tells the patient that legal action lies against the surgeon? Obviously the answer must be with the discovery that a wrong has been committed and not that the party may sue for the wrong. This conclusion is supported by the holdings in *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166 (1970); *Hackworth v. Hart,* Ky., 474 S.W.2d 377 (1971); and *Louisville Trust Co. v. Johns–Manville Products,* Ky., 580 S.W.2d 497 (1979).

*Id.* at 334. Likewise, in *Graham v. Harlin, Parker & Rudloff,* 664 S.W.2d 945 (Ky.App.1983), *overruled on other grounds by Alagia, Day, Trautwein & Smith v. Broadbent,* 882 S.W.2d 121 (Ky.1994), this court held in a legal malpractice case that "[t]he knowledge that one has been wronged and by whom starts the running of the statute of limitations for professional malpractice, not the knowledge that the wrong is actionable." *Id.* at 947, *citing Conway, supra.* In short, based on the *Conway* and *Graham* cases, we reject Vannoy's argument that the one-year period did not begin to accrue until he learned he had an actionable claim.[3]

We now turn to consider whether the circuit court correctly applied Kentucky's discovery rule to the undisputed facts of this case. In the *Wiseman* case, the Kentucky Supreme Court once again defined the discovery rule when it stated that "[t]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." 37 S.W.3d at 712, *quoting Hackworth v. Hart,* 474 S.W.2d 377, 379 (Ky.1971). *See also* KRS 413.140(2). The discovery rule in cases such as this was refined by the Kentucky Supreme Court in *Louisville Trust Co. v. Johns–Manville Prods. Corp.,* 580 S.W.2d 497 (Ky.1979). Therein, the court stated that "[a] cause of action will not accrue under the discovery rule until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Id.* at 501, *quoting Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 371 A.2d 170, 174 (1977). In the *Imes* case, the court noted that the rule as adopted in *Louisville Trust* applies to cases "when an injury does not manifest itself immediately[.]" 784 F.2d at 758.

It is undisputed that Vannoy knew both of his harm, vestibular damage and its associated symptoms, as well as the fact that the gentamicin therapy was, at least in part, the cause of that harm. In addition, he had knowledge of Dr. Milum's role in prescribing and continuing the gentamicin therapy. Vannoy, upon obtaining his records, had in his hands all relevant facts upon which he now rests his present claim of negligence.

Vannoy's knowledge is similar to that of the claimants in the *Hazel, Gregory,* and *Michals* cases. In *Hazel,* the claimant knew both of the extent of his injuries and

---

**3.** The principle in the *Conway* and *Graham* cases has been followed by federal courts interpreting and applying Kentucky's discovery rule. These cases include *Drake v. B.F. Goodrich Co.,* 782 F.2d 638 (6th Cir.1986); *Imes v. Touma,* 784 F.2d 756 (6th Cir.1986); *Gregory v. Poor,* 862 F.Supp. 171 (W.D.Ky. 1994); *Hazel v. General Motors Corp.,* 863 F.Supp. 435 (W.D.Ky.1994); *Blanton v. Cooper Indus., Inc.,* 99 F.Supp.2d 797 (E.D.Ky. 2000); *Michals v. Baxter Healthcare Corp.,* 289 F.3d 402 (6th Cir.2002).

the fact that they were due to a fuel-fed fire derived from the ruptured fuel tank. 863 F.Supp. at 437. In *Gregory,* the claimant knew the result of the medical procedure immediately upon waking in the recovery room. At that point in time, he was aware of the harm and the fact that it was the result of the doctor's actions. 862 F.Supp. at 172. Finally, in *Michals,* the court noted that the claimant knew of the harm she had suffered as a result of the silicone breast implants manufactured by Baxter's predecessor. Further, the court found it could be inferred that she attributed that harm to the implants based on the fact she had them replaced. 289 F.3d at 404.

In each of the above cases, the court found it was sufficient that the claimant knew both the harm and the cause of that harm. By knowing the cause of the harm in these cases, the claimant then knew, or should have known, of the relationship of the defendant's actions to the cause of that harm. Such is the case herein. Vannoy concedes that he knew by the summer of 1998 both the harm he had suffered and the cause of that harm. By obtaining his medical records and by considering the content of those records in light of Dr. Milum's role in prescribing the drug, Vannoy knew, or should have known, of Dr. Milum's role in relationship to the gentamicin therapy.

Further, Vannoy's knowledge was not as limited as that possessed by the claimants in the *Louisville Trust, Imes,* and *Wiseman* cases. In *Louisville Trust,* the claimant knew of his exposure to asbestos dust and fibers long before he was diagnosed with the resulting cancer. It was not until he knew of both the resulting harm and the cause of that harm that the statute of limitations was triggered. 580 S.W.2d at 498. In *Imes,* the claimant knew of the harm before he knew of the

cause of that harm. He knew the metal plate had snapped, accompanied by the resulting fracture of his femur. However, it was not until he later obtained medical records that he became aware of the fact that the harm was due to "inadequate solidarity" from the first medical procedure. 784 F.2d at 756–57. Likewise, in *Wiseman,* the claimant knew immediately following the 1989 procedure that she suffered from unexplained pain. However, it was not until the piece of uterine probe was discovered and removed in 1996 that she knew the cause of that pain was related to the 1989 procedure. 37 S.W.3d at 710–11. In each of these cases, the claimant lacked information related either to the harm or to the cause of that harm.

The lack of information relating to one of the two necessary factors present in the *Louisville Trust, Imes,* and *Wiseman* cases is not present in this case. Vannoy did not have a latent injury that developed over time well after the defendant's actions had taken place. Nor is there any dispute in this case as to Vannoy's knowledge that the gentamicin therapy was, at least in part, a cause of his vestibular damage. In addition, Vannoy knew of Dr. Milum's role in prescribing and continuing the gentamicin therapy. Further, it is undisputed that Vannoy possessed this knowledge no later than September 1999, well before his claim was filed in March 2002.

Finally, Vannoy argues that the issue of when he knew or should have known the required factors is a question of fact for the jury. While the issue may be a question of fact subject to a jury's determination in some cases, we disagree that a genuine issue of material fact exists in this case. Vannoy possessed the requisite knowledge to trigger the one-year statute of limitations by no later than September 1999. As he did not file his complaint in the circuit court until March 2002, the

circuit court correctly ruled that the complaint should be dismissed as untimely.

The judgment of the Hopkins Circuit Court is affirmed.

ALL CONCUR.