RENDERED:  FEBRUARY 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0056-MR

JENNIFER COMBS                                                                   APPELLANT


APPEAL FROM FAYETTE CIRCUIT COURT
v.         HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 17-CI-04008


BLUEGRASS PLASTIC AND
RECONSTRUCTIVE SURGERY
P.S.C.; DOROTHY CLARK, M.D.;
AND LISA COMBS, RN                                                               APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE:  Jennifer Combs ("Combs") appeals from the Fayette Circuit

Court's grant of summary judgment in favor of the above-named appellees based

on Combs having filed her complaint outside of the one (1) year statute of

limitations period for medical malpractice claims.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2013, Combs underwent a breast reduction, liposuction, and abdominoplasty with Dr. Dorothy Clark at Bluegrass Plastic and Reconstructive Surgery P.S.C. ("Bluegrass"). During the surgery, Dr. Clark placed four Jackson-Pratt drains in Combs' breasts and abdomen to ensure proper drainage of fluid. A Jackson-Pratt drain is a long, cylindrical tube made from surgical silicone material. Medical personnel place one end of the tubing inside the body, and the other end remains outside of the body.

On October 7, 2013, Bluegrass medical staff removed three of the four Jackson-Pratt drains placed during surgery. The fourth drain, which was in Combs' abdomen, continued to drain larger amounts of fluid. Thus, Dr. Clark wanted the drain to stay in place until the fluid output decreased. Dr. Clark's post-operative notes from October 14, 2013, stated "[Combs] is a registered nurse and inquired about the possibility of taking [the remaining drain] out herself. I told her I did not have a problem with that but that she needed to have less than 30 mL per day for two consecutive days prior to removing it."

Combs testified that on Saturday, October 26, 2013, the output from the drain was below the threshold necessary for removal, and the suture holding the drain appeared to have broken. Thus, Combs decided to remove the remaining drain herself. As she started removing the tube, she met resistance, experienced

pain, and became nauseous. At that point, Combs stopped her attempt to remove the drain and called her mother-in-law, appellee Lisa Combs, who was also a registered nurse ("Nurse Combs"). Nurse Combs also met resistance when trying to remove the drain. After speaking with Dr. Clark, Nurse Combs was ultimately successful in removing the fourth drain, which she preserved in the freezer.

Combs attended her previously scheduled post-op appointment with Dr. Clark on Monday, October 28, 2013, and reported Nurse Combs' removal of the drain. Combs also brought the part of the drain she had removed to that appointment because the appearance of the tube's end concerned her due to its jagged edge. Dr. Clark assured her that she had to cut the tubes to size in the operating room and explained that she had folded the tube in half and had sliced across it with a scalpel, thus creating the jagged edge. Dr. Clark declined to order an X-ray or CT scan to confirm that no tubing remained in Combs' body.

Approximately three (3) years later, on October 13, 2016, Combs presented to Georgetown Community Hospital's emergency department ("Georgetown ED") with complaints of vomiting, low back pain, and urinary urgency. The Georgetown ED medical staff performed a CT scan of Combs' abdomen and pelvis, which showed two separate surgical drains in the subcutaneous tissues of her abdominal wall. Based upon the medical records, the Georgetown ED providers concluded the drains were from Combs' 2013

abdominoplasty. Medical records indicate that the Georgetown ED providers discussed this conclusion with both Combs and Dr. Clark on October 13, 2016. Moreover, Combs' answers to Dr. Clark's interrogatories reflect that on October 13, 2016, Combs became aware that the emergency physician attributed the drains seen in the imaging to her 2013 abdominoplasty with Dr. Clark. Moreover, at her deposition, Combs testified that the Georgetown ED providers informed her about the drains found on the CT imaging and asked her about any previous abdominal surgeries.

After telling them about her 2013 abdominal surgery with Dr. Clark, the Georgetown ED providers called Dr. Clark. Following the call and Dr. Clark's recommended course of action, Georgetown ED providers recommended that Combs not speak with Dr. Clark or return to her office for outpatient removal of the drains. Specifically, Combs testified that Dr. Dietz, a Georgetown ED provider, believed Combs "shouldn't receive care in – in this situation when like a mistake had been made." Further, Combs testified:

> Q. . . . So did Dr. Dietz tell you that she thought a mistake had been made?
>
> A. Oh, yeah. They were freaking out the way – I mean, it's a huge mistake. She wanted to know how this happened.

Combs did not see or speak to Dr. Clark after October 13, 2016, and underwent surgery on April 7, 2017, with a different doctor to remove the tubing.

Combs filed a complaint with the then-active Medical Review Panel on October 20, 2017. Thereafter, on November 9, 2017, Combs filed the underlying action in Fayette Circuit Court alleging medical malpractice against Bluegrass, Dr. Clark, and Nurse Combs. The circuit court stayed the action because of the pending Medical Review Panel action.

On September 3, 2019, following the determination that the statutes creating and implementing the Medical Review Panel violated Section 14 of the Kentucky Constitution, the circuit court revived the action. The appellees filed an answer on August 30, 2019, and specifically listed statute of limitations as an affirmative defense.

Subsequently, the circuit court placed the underlying action on the show cause docket on January 22, 2021, due to a lack of prosecution for more than one year. On February 11, 2021, the circuit court ordered that the case remain on the docket. However, Combs took no steps to advance the case. And again, on January 9, 2023, the circuit court placed the case on the show cause docket for failure to prosecute. Thereafter, and for the first time since filing the complaint, Combs initiated written discovery and was deposed on January 31, 2024. As a result of Combs' testimony confirming her verified interrogatory answers, the appellees moved for summary judgment based on the statute of limitations, which the Fayette Circuit Court granted. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Standard of Review

A court may only grant a motion for summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. Summary judgment is only proper where "it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citations omitted). At the summary judgment stage, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). "We review *de novo* the trial court's grant or denial of a motion for summary judgment." *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 225–26 (Ky. 2020) (citation omitted).

### 2. Discussion

Under Kentucky Revised Statute ("KRS") 413.140(1)(e), any action against a physician alleging negligence or malpractice "*shall* be commenced within one (1) year after the cause of action accrued[.]" (Emphasis added.) Further, "the cause of action shall be deemed to accrue at the time the injury is first discovered

or in the exercise of reasonable care should have been discovered[.]"  KRS 413.140(2).  The Kentucky Supreme Court has further noted that "[t]his rule entails knowledge that a plaintiff has a basis for a claim before the statute of limitations begins to run.  The knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and, (2) by whom the wrong has been committed." *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000) (citations omitted).

In *Vannoy v. Milum*, a panel of this Court explained that knowledge of one's injury is not determined by whether the plaintiff knows her claim is actionable.  171 S.W.3d 745, 748–49 (Ky. App. 2005).  Thus, when the plaintiff in *Vannoy* was informed by other physicians that his injury was attributable at least in part to his doctor's antibiotic treatment, that knowledge was sufficient to start the statute of limitations period even though the plaintiff did not know that the doctor's specific act of negligence was a failure to prescribe the right dosage and properly monitor the plaintiff.  *Id*. at 750.

Similarly, the Kentucky Supreme Court in *Sneed v. University of Louisville Hospital* reiterated the precedent that the statute begins to run on the date the injury is – or should have been – discovered.  *Sneed*, 600 S.W.3d at 226. In *Sneed*, this knowledge came from a conversation between Sneed and a subsequent medical provider who informed her that she sustained a rectovaginal

fistula as a result of the repair of a fourth-degree vaginal laceration. *Id.* at 224–225. Multiple providers informed Sneed they were critical of the care she had received that led to the fistula. *Id.* The *Sneed* Court held that Sneed possessed all the knowledge needed to file a claim. *Id.* at 230.

In this case, as in *Vannoy,* it is clear that Combs "had in [her] hands all relevant facts" necessary to constitute knowledge of her injury on October 13, 2016, which was the date that the emergency room medical staff performed a CT scan of her abdomen and pelvis. 171 S.W.3d at 749. Much like in *Sneed*, Combs gained knowledge of her alleged injury from subsequent medical providers. She was informed by Georgetown ED medical staff on October 13, 2016, that CT imaging revealed drains retained in her abdomen. Moreover, she reported that her only abdominal surgery was in 2013 with Dr. Clark. As a result, the emergency department providers, together with Combs, called Dr. Clark to discuss the findings.

Further, Combs' verified interrogatory answers and deposition testimony confirm that she spoke with Dr. Clark and separately with Dr. Dietz regarding the possible removal of the drains. The medical records, as well as Combs' interrogatories and deposition testimony, confirm discovery of the drains was discussed with Combs at least twice while she was at the emergency department. Specifically, Combs testified that Dr. Dietz recommended she not

-8-

contact Dr. Clark anymore because Dr. Dietz did not agree with Dr. Clark's planned removal, and Combs "shouldn't receive care in – in this situation when like a mistake had been made."  Further, Combs testified:

> Q. . . .  So did Dr. Dietz tell you that she thought a mistake had been made?
>
> A. Oh, yeah.  They were freaking out the way – I mean, it's a huge mistake.  She wanted to know how this happened.

At this point, Combs had knowledge of her alleged injury as of October 13, 2016, through CT imaging, conversations with multiple medical providers, and by process of elimination as to the source of the retained drains.

We further note that the Medical Review Panel Act did not toll the statute of limitations in this case.[1]  In this case, Combs did not file her Medical Review Panel complaint until October 20, 2017, which – as discussed above – was untimely.  Since the filing of her Medical Review Panel complaint was untimely, Combs cannot avail herself of any of the tolling provisions contained therein.

Finally, in her reply brief, Combs argues that the circuit court erred when it declined to allow her to amend her complaint to allege additional claims. An abuse of discretion standard of review applies to trial court rulings on whether

---

[1] The Kentucky Supreme Court found the entirety of this chapter to be unconstitutional in 2018 by *Commonwealth v. Claycomb By and Through Claycomb*, 566 S.W.3d 202, 218 (Ky. 2018).

-9-

to grant leave to amend pursuant to CR 15.01.  *Laneve v. Standard Oil Co.*, 479 S.W.2d 6, 9 (Ky. 1972).

In this case, Combs has provided us with no concrete reasons as to why the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).  The circuit court removed the stay on this action on September 3, 2019, following the determination that the statutes creating and implementing the Medical Review Panel violated Section 14 of the Kentucky Constitution.  Thereafter, on both January 22, 2021, and January 9, 2023, the circuit court placed the action on the show cause docket due to Combs' failure to move the case forward for more than one year.  Even after the court allowed the case to proceed, Combs was not deposed until January 31, 2024, over four years after the circuit court lifted the stay.  On this record, we cannot conclude that the circuit court clearly erred by denying Combs' motion for leave to amend her complaint.

## **CONCLUSION**

For the foregoing reasons, we AFFIRM the Fayette Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANT:

William D. Nefzger
Louisville, Kentucky

BRIEF FOR APPELLEES:

Clayton L. Robinson
Courtney L. Soltis
Lexington, Kentucky