Deborah WISEMAN, Appellant,

v.

ALLIANT HOSPITALS, INC.; Mario V. Ulfe, MD; Guari & Ulfe PSC, Appellees.

No. 1999–SC–0970–DG.

Supreme Court of Kentucky.

Nov. 22, 2000.

Rehearing Denied March 22, 2001.

Lee E. Sitlinger, Louisville, for appellant.

Frank P. Hilliard, Ed Monarch, Donald W. Darby, David B. Gazak, Louisville, for appellee.

GRAVES, Justice.

The Jefferson Circuit Court entered a summary judgment dismissing Appellant Deborah Wiseman's medical malpractice complaint on the grounds that, as a matter of law and pursuant to the discovery rule, Appellant failed to file her action within the applicable limitations period. The Court of Appeals affirmed. We reverse the decision of the Court of Appeals and remand to the Jefferson Circuit Court for further proceedings in accordance with this opinion.

On August 30, 1989, Appellee, Dr. Mario Ulfe, who was Appellant's gynecologist for nearly fifteen (15) years, excised a portion of Appellant's cervical tissue (conization)

and performed a dilatation and curettage (D & C) procedure. Immediately following the surgery, Appellant complained of pain in the area of the coccyx (tailbone). Dr. Ulfe advised Appellant that the surgery should not cause such pain, and noted that the pain would likely disappear once the packing was removed from the cervical area. During a post-operative check-up, Appellant continued to complain of pain. Dr. Ulfe performed a pelvic examination which established that Appellant's post-operative condition was good, and did not disclose the source of her pain. At that time, Appellant inquired about a possible injury to her tailbone having occurred during the surgery.

In September 1989, Appellant consulted her family doctor, Dr. Hilgeford, who diagnosed a broken tailbone. He repositioned the bone and prescribed muscle relaxers and pain pills for relief.

In 1990, Appellant moved to Georgia. Over the next four to five years, she continued to experience pain in her lower back. Her new gynecologist attributed the pain to Appellant's history of a broken tailbone, explaining that the surrounding area evidently had a tendency to become inflamed. In November 1995, a cyst, or boil, developed on the back of Appellant's left leg and she sought medical treatment from her husband's doctor, Dr. Krauss, who lanced the area and packed it. When the area continued to drain and would not heal, Appellant's gynecologist referred her to a surgeon, Dr. Richard Cummings.

On January 16, 1996, Dr. Cummings examined Appellant and diagnosed a lesion on her buttocks about the size of a nickel and chronic draining in her gluteal area. He observed acute inflammation and subsequently explored the area under local anesthesia. In his deposition, Dr. Cummings testified that when he opened the infected area, he discovered a piece of a metal medical instrument, approximately three to four centimeters in length, located one-half inch to three-quarters inch under the surface of the skin. The object was later determined to be part of a surgical instrument, specifically, the tip of a uterine probe. Dr. Cummings removed the piece of metal and gave it to Appellant. Dr. Cummings stated that he did not know how the metal came to be in Appellant's body at that location.

On December 16, 1996, eleven months after Dr. Cummings discovered the piece of metal in Appellant's leg, Appellant filed a medical malpractice action against Dr. Ulfe and Norton Hospital. Appellant alleged that during the cervical conization and D & C procedure performed in 1989, Dr. Ulfe left a part of the uterine probe inside her uterus, which eventually migrated to the area of her left leg.

Dr. Ulfe filed a motion for summary judgment on the grounds that Appellant's own deposition testimony established that she had knowledge of some type of an injury within weeks of, if not immediately following, the conization procedure, and further, that she strongly suspected the origin of the injury to have been related to the procedure itself. Appellant responded that pursuant to the "discovery rule" set forth in KRS 413.140(2), her cause of action "accrue[d] at the time the injury [was] first discovered or in the exercise of reasonable care should have been discovered," and that she did not discover the injury until January 16, 1996, when Dr. Cummings removed the piece of metal from her body. The Jefferson Circuit Court granted summary judgment in favor of Dr. Ulfe, finding that Appellant's cause of action had accrued "as early as August 30, 1989[,] and as late as June 1994."

Appellant argues that she had no reason to know or suspect that Dr. Ulfe had left a foreign object in her body until Dr. Cummings removed the object in January 1996. She concedes that shortly after the conization procedure in 1989, she questioned whether her discomfort was temporally related to the 1989 procedure since she began having pain immediately thereafter, but that all subsequent medical examiners

throughout the years were indefinitive as to the origin of her pain and attributed it to a tailbone injury. Thus, following their treatment, Appellant maintains she could not have known that Dr. Ulfe had left a piece of medical equipment in her body.

The discovery rule, a means by which to identify the "accrual" of a cause of action when an injury is not readily ascertainable or discoverable, was first enunciated in *Tomlinson v. Siehl,* Ky., 459 S.W.2d 166 (1970), and later refined in *Hackworth v. Hart,* Ky., 474 S.W.2d 377 (1971): "[T]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Id.* at 379. This rule entails knowledge that a plaintiff has a basis for a claim before the statute of limitations begins to run. The knowledge necessary to trigger the statute is two-pronged; one must know: (1) he has been wronged; and, (2) by whom the wrong has been committed. *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 641 (6th Cir.1986). *See also Hazel v. General Motors Corp.,* 863 F.Supp. 435, 438 (W.D.Ky.1994) ("Under the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct.")

"Discovery of injury" jurisdictions have concluded that the statute of limitations does not begin to run even though a harmful condition is known to a plaintiff so long as its negligent cause and its deleterious effect are not discovered. *See Hundley v. St. Francis Hospital,* 161 Cal.App.2d 800, 327 P.2d 131 (1958). The determination lies in the distinction between "discovery of harm" and "discovery of injury." The Restatement (Second) of Torts § 7, comment (1965), defines "harm" as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Harm in the context of medical malpractice might be the loss of health

following medical treatment. "Injury," on the other hand, is defined as "the invasion of any legally protected interest of another." Thus, injury in the medical malpractice context refers to the actual wrongdoing, or the malpractice itself. Harm could result from a successful operation where a communicated, calculated risk simply turns out poorly for the patient, although the medical treatment met the highest medical standards. *Hall v. Musgrave,* 517 F.2d 1163, 1168 (Celebrezze, J., dissenting) (6th Cir.1975). In such case, there would be no "injury," despite the existence of "harm." Under the discovery rule, it is the date of the actual or constructive knowledge of the injury which triggers the running of the statute of limitations. *See Hall, supra.*

Appellant's deposition reveals that shortly after her surgery in 1989, she began experiencing pain of an unknown origin. Appellant testified that she suspected her problems stemmed from the 1989 surgery. In fact, in giving her medical history to doctors in Georgia, she even traced her pain to that date. Furthermore, she testified that when she saw the piece of metal which Dr. Cummings extracted from her leg, it confirmed her suspicion that its origin was the 1989 procedure performed by Dr. Ulfe. Some may interpret Appellant's testimony that while she may not have known the full extent of her injury, she knew as early as two weeks after her surgery in 1989 that she was suffering the harmful effects of something that went wrong during that surgery. Appellant may have even been skeptical about Dr. Hilgeford's 1989 diagnosis of a broken tailbone, evidently believing throughout the years the root of her problem was the conization and D & C procedure performed by Dr. Ulfe.

Notwithstanding, while Appellant may have suspected that something went wrong during the surgery, that in and of itself was insufficient to accrue a cause of action. One who possesses no medical knowledge should not be held responsible

for discovering an injury based on the wrongful act of a physician. The nature of the tort and the character of the injury usually require reliance on what the patient is told by the physician or surgeon. The fiduciary relationship between the parties grants a patient the right to rely on the physician's knowledge and skill. *Black v. Littlejohn,* 312 N.C. 626, 325 S.E.2d 469 (1985).

The trial court erroneously equated "harm" with "injury." Such ruling ignores the tenuous nature of predicting medical results, and is particularly inappropriate when viewed in the context of a motion for summary judgment. Appellant was aware of the "harm" done to her well before she discovered that she had been the victim of medical malpractice. However, her cause of action did not accrue until the fact of her injury became objectively ascertainable.

 A legally recognizable injury does not exist until the plaintiff discovers the defendant's wrongful conduct. Because Appellant's injury was not readily apparent until the discovery of the piece of uterine probe, she was unaware that she had a viable claim for medical malpractice. A mere suspicion of injury due to medically unexplainable pain following an invasive surgery does not equate to discovery of medical negligence. "To require a man to seek a remedy before he knows of his rights, is palpably unjust...." *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745, 753 (1968). In order to trigger the statute of limitations, a plaintiff must discover the injury—the invasion of a legally protected interest. Appellant filed her medical malpractice complaint within one year from the date she became aware she had been injured as a result of Dr. Ulfe's negligence. As such, the trial court erred in granting summary judgment.

The decision of the Court of Appeals is reversed, and this matter is remanded to the Jefferson Circuit Court for further proceedings consistent with this opinion.

All concur.