**Fernice JOHNSON and Richard
Johnson, Plaintiffs–
Appellants,**

v.

**SANDOZ PHARMACEUTICALS
CORPORATION, Defendant–
Appellee.**

No. 00–6034.

United States Court of Appeals,
Sixth Circuit.

Dec. 28, 2001.

Before NELSON, DAUGHTREY, and
MOORE, Circuit Judges.

DAUGHTREY, Circuit Judge.

Plaintiff Fernice Johnson appeals the district court's grant of summary judgment to the defendant, Sandoz Pharmaceuticals, in a products liability action in which Johnson alleged that her ingestion of Parlodel, an antilactation drug manufactured by Sandoz, caused her to suffer a stroke after the birth of her second child in mid-March 1991. Her stroke was diagnosed in early April 1991, after she had suffered headaches for several weeks. Johnson claims that at no time while she was taking the drug and at no time while she was suffering headaches did anyone inform her of the risks associated with Parlodel. In fact, Johnson claims that she did not learn of the alleged association between Parlodel and strokes until she saw a lawyer's advertisement in her local paper in late 1994 or early 1995. Less than a year later, she filed this products liability lawsuit against Sandoz. After a period of discovery, the district court entered summary judgment in favor of Sandoz, holding that Johnson's claims were barred by the one-year Kentucky statute of limitations.

When the record is viewed in the light most favorable to the plaintiff as non-mov-

ant, we conclude that there is a genuine issue of material fact concerning whether, in the exercise of reasonable diligence, the plaintiff should have discovered the alleged association between Parlodel and her stroke prior to reading the newspaper advertisement. We therefore reverse the judgment of the district court and remand the case for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 1991, Johnson, a 32-year-old Louisville resident, gave birth to her second child by Caesarean section at Humana Audubon Hospital in Louisville. The same day, because Johnson had chosen not to breast feed her son, Dr. Ernest Marshall prescribed her a two-week course of Parlodel to be taken twice daily. The package insert for Parlodel says that it is indicated for, among other things, the prevention of physiological lactation in new mothers electing not to breast feed. Johnson had previously taken Parlodel after the birth of her first child—also under a prescription from Dr. Marshall—to no ill effect. The next day, while still in the hospital recovering from the Caesarean section, Johnson complained of a headache to hospital staff. The following day, March 14, she made the same complaint.

Johnson was discharged from the hospital on March 15, 1991, with a prescription for a pain medication and the remainder of the two-week course of Parlodel. A registered nurse visiting Johnson at her home on March 17 documented that Johnson was still complaining of headaches. Apparently, the nurse contacted one of the physicians in Dr. Marshall's office about Johnson's headache, and Johnson received another prescription for pain medication.

When Johnson was still experiencing headaches days later, she contacted a nurse in Dr. Marshall's office. The nurse asked Johnson to come in for a visit, which she did on March 28. At that time, a nurse checked Johnson's blood pressure and determined that it was elevated. Johnson reported experiencing dizziness when she stood up. Blood work taken revealed abnormalities.

On the morning of March 30, Johnson called an ambulance to her home because of abdominal pain, nausea, vomiting and diarrhea. She reported to the ambulance crew that she had experienced headaches since the birth of her child on March 12, as well as intermittent numbness in her legs. The ambulance crew took Johnson back to Humana Hospital Audubon, and—after examination—she was diagnosed with gastroenteritis and sent home with medication for fever and diarrhea.

The very next day, Johnson again called an ambulance to her home, complaining of difficulty walking, as well as numbness and tingling in her right leg. This time, Johnson was admitted to a different hospital, Humana Hospital, University of Louisville. Johnson did not disclose to her treaters at this new hospital that she had taken Parlodel after giving birth. Tests and examinations at the hospital revealed that Johnson had suffered a stroke.

The package insert for Parlodel in effect at the time Johnson suffered her stroke notes reports of stroke in patients using the drug for the prevention of physiological lactation. Johnson did not receive this insert, nor did she receive any warnings about potential side-effects.

A little more than three years after experiencing the stroke, Johnson saw an advertisement in the Louisville *Courier–Journal* placed by attorney Gary Becker. (The exact date Johnson reviewed the advertisement is unknown, but an affidavit from Becker states that his Parlodel advertisement ran for the first time no earli-

er than May 24, 1994.) The advertisement targeted women who had taken Parlodel for the treatment of postpartum physiological lactation and had suffered strokes or heart attacks. Upon learning for the first time of the alleged association between Parlodel and strokes, Johnson contacted Becker regarding her own experience.

Within a year of reading Becker's advertisement, on April 24, 1995, Johnson and her husband filed suit against Sandoz Pharmaceuticals Corporation, alleging that her stroke and the continuing injuries that had resulted from the stroke were caused by her ingestion of Parlodel in 1991. Subsequently, Sandoz moved for summary judgment on the grounds that the Johnsons' claims were time-barred as a matter of Kentucky law. The district court agreed, holding that the one-year statute of limitations began to run at the time of Johnson's stroke in April 1991. At that time, the district court held, Johnson "knew or should have known enough facts to trigger the duty to engage in further inquiry so as to discover that the Parlodel possibly caused her stroke." In so concluding, the district court noted that, in the late 1980's, at the request of the Food & Drug Administration, Sandoz changed its labeling regarding potential risks associated with Parlodel to include certain "serious adverse experiences," among them stroke. Further, the district court concluded that it was Johnson's failure to inform her doctors that she had taken Parlodel that "precluded them from advising her of a possibility that the drug had caused her stroke." Accordingly, the district court granted final summary judgment to Sandoz, and Johnson now appeals.

## DISCUSSION

■ The rule is well-settled that, in general, a products liability claim accrues at the time of injury. Typically, the injury is discovered and the cause identified more or less simultaneously. Under such circumstances it is easy to identify the accrual date of the cause of action. In other cases, particularly involving exposure to harmful substances, there may be a lag between the defendant's injury-causing conduct and the plaintiff's discovery of his or her injury. In this latter category of cases, many times there is also a lag between discovery of the injury and discovery of the injury's cause, further complicating the task of determining the date of accrual. Johnson's is such a case.

Under Kentucky law, a claim for personal injury must be brought within one year "after the cause of action accrued." Ky. Rev.Stat. Ann. § 413.140(1)(a). Here, the question is whether the district court was correct in holding as a matter of law that Johnson's claim accrued at the time of her stroke in April 1991.

In *Louisville Trust Co. v. Johns–Mansville Prods. Corp.*, 580 S.W.2d 497, 501 (Ky.1979), an asbestos case, the Kentucky Supreme Court expressly embraced what it called a "workable and just" rule articulated by the New Hampshire Supreme Court postponing the date of accrual until such time as the plaintiff had a reasonable opportunity to discover that his injury may have been caused by the defendant's wrongdoing. In endorsing the New Hampshire rule, the court stated it was "convince[d]" that "the clear trend in most jurisdictions in cases dealing with drugs, chemicals, and asbestos has been to apply some variation of the discovery rule which is based on equitable considerations." *Id.* The articulation of the rule—as embraced in *Louisville Trust*—is as follows:

> In a case, such as the one before us, in which the injury and the discovery of the causal relationship do not occur simultaneously, it is important to articulate exactly what the discovery rule

means. We believe that the proper formulation of the rule and the one that will cause the least confusion is the one adopted by the majority of courts: A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured *but also that his injury may have been caused by the defendant's conduct.*

*Id.* (quoting *Raymond v. Eli Lilly & Co.,* 117 N.H. 164, 371 A.2d 170, 174 (1977)) (emphasis added).

Sandoz appears to urge us to hold that under Kentucky law, Johnson's claim accrued on the date of injury, regardless of what opportunity she had to discover the alleged causal relationship between Parlodel and her stroke. In support, Sandoz cites a 1990 Kentucky Supreme Court case suggesting that the court, without engaging in any analysis, has effectively repudiated the rule set forth *Louisville Trust Co.* In that case, a wrongful death action, the court said flatly that "[e]ven in cases where the discovery rule has been applied, we have held that the cause of action accrues when the *fact of injury* is known." *McCollum v. Sisters of Charity,* 799 S.W.2d 15,19 (Ky.1990). Only a year after *McCollum,* however, the Kentucky Supreme Court expressly reaffirmed the rule articulated in *Louisville Trust Co.* in a case involving exposure to a harmful chem-

ical. *See Perkins v. Northeastern Log Homes,* 808 S.W.2d 809 (Ky.1991). There, in discussing the evolution of the discovery rule in Kentucky, the court observed that in *Louisville Trust Co.,* it had extended the discovery rule to actions against manufacturers of defective products in cases involving latent disease and had "addressed a further problem in latent disease cases ... regarding knowledge of the 'causal connection' between the product and the disease, resolving this problem by embracing the [rule announced in] a New Hampshire Supreme Court case ...." *Id.* at 818. As a result, courts applying Kentucky law have repeatedly articulated the Kentucky rule, at least with respect to latent injuries caused by exposure to a harmful substance, as requiring both discovery of injury *and* a reasonable opportunity to discover the causal relationship before the claim accrues.[1] *See, e.g., Reese v. Gen. Am. Door Co.,* 6 S.W.3d 380 (Ky.Ct. App.1999); *Douthitt v. E.I. Dupont De Nemours & Co.,* 181 F.3d 100, 1999 WL 357795, at *1 (6th Cir. May 20, 1999); *Blanton v. Cooper Indus., Inc.,* 99 F.Supp.2d 797, 801 (E.D.Ky.2000). Indeed, the district court below, in analyzing whether Johnson should have known of the risks associated with Parlodel, performed an analysis consistent with *Louisville Trust Co.* in ruling for Sandoz.

**1.** Sandoz cites one unpublished opinion from this circuit that, citing *McCollum,* appears to hold that personal claims accrue when injury is discovered, with no inquiry regarding a reasonable opportunity to identify cause. *Gregory v. Poor,* 70 F.3d 1271, 1995 WL 704195 (6th Cir. Nov.29, 1995). However, the Kentucky Supreme Court has since made clear that this proposition is incorrect. *See Wiseman v. Alliant Hosp., Inc.,* 37 S.W.3d 709 (Ky.2000) (applying discovery rule in medical malpractice case to defer accrual of plaintiff's claim to such time as plaintiff discovered her symptoms were caused by negligence). Moreover, at least one Kentucky court has

interpreted *McCollum* as confined to the wrongful death context and not affecting the application of the discovery rule in latent injury cases. *See, e.g., Gray v. Commonwealth,* 973 S.W.2d 61 (Ky.Ct.App.1997) ("The discovery rule does not operate to toll the statute of limitations in a wrongful death case filed in a circuit court, absent a defendant's fraudulently concealing or misrepresenting the circumstances of death, because the cause of action accrues when the fact of injury is known; the decedent's death provides the notice to investigate.... The discovery rule applies to latent injury cases ....") (citing *McCollum* ).

Sandoz also argues strenuously that the rule embraced by the Kentucky Supreme Court in *Louisville Trust Co.* applies only where the plaintiff's injury does not manifest itself for a long period—measured in years—after exposure to the harmful agent, regardless of whether the plaintiff could have learned by exercising reasonable diligence of the injury's cause. Sandoz points out that *Louisville Trust Co.* involved a latency period of "many years," and highlights the court's statement that it had decided "to extend the discovery rule ... to tort actions from injury resulting from a latent disease caused by exposure to a harmful substance." 580 S.W.2d at 499.

However, a recent, thorough analysis of the discovery rule by the Kentucky Supreme Court, released after the district court rendered its decision in this case, shows that Sandoz's reading of the discovery rule is unduly cramped. *See Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky.2000). In *Wiseman*, the plaintiff began feeling pain in her tailbone immediately after undergoing a gynecological surgery in August 1989. *Id.* at 710–11. She informed her gynecologist, who told her that the pain would likely disappear. *Id.* at 711. At a post-operative check-up, Wiseman complained again, to the same doctor. One month later, she saw her family doctor, who diagnosed her with a broken tailbone and prescribed pain pills. Over the next several years, Wiseman continued to experience pain in her lower back and sought treatment from more doctors. Finally, in January 1996, she saw a surgeon who, after examination, opened the affected area and found a piece of a metal surgical instrument located under the surface of Wiseman's skin. Eleven months later, Wiseman sued her gynecologist, and the hospital where she had undergone the 1989 procedure, for medical malpractice. *Id.*

The trial court in *Wiseman* entered summary judgment for the gynecologist on the grounds that the one-year statute of limitations had long since expired on Wiseman's personal injury claims. The Kentucky Supreme Court reversed and held that the discovery rule "entails knowledge that a plaintiff has a basis of a claim before the statute of limitations begins to run." *Id.* at 712. In reaching its holding, the court drew a distinction between "discovery of harm" and "discovery of injury." *Id.* Although Wiseman discovered that she had been *harmed* upon experiencing pain immediately after surgery, she was unaware of her *injury*—defined as "the invasion of a[ ] legally protected interest"—until many years later. *Id.* Because Wiseman's injury was *"not readily apparent," id.* at 713 (emphasis added), until discovery of the piece of metal embedded under her skin, in spite of her persistent and obvious symptoms, Wiseman was unaware of her claim. The court made clear that "[a] mere suspicion of injury due to medically unexplainable pain following an invasive surgery does not equate to discovery of medical negligence." *Id.*

We believe that the Kentucky discovery rule, as reflected in *Louisville Trust Co.* and *Wiseman*, is applicable here. The relatively short period between exposure and harm, rather than being dispositive, is something the fact-finder may consider, along with the other surrounding circumstances, in determining whether Johnson should have known, in the exercise of reasonable diligence, of the alleged causal relationship between Parlodel and her stroke.

Those other circumstances include Johnson's claim that she was never informed by her doctors of the risk of stroke associated with Parlodel or provided with a copy of any literature containing warnings about

the drug. She had taken the drug after her first pregnancy without experiencing any problems. Parlodel was not the only medication Johnson was taking in the days following her Caesarean section when she began experiencing symptoms—she was also taking at least one pain-killer. Assuming that she took her course of Parlodel as dispensed, Johnson would have finished taking the drug on or about March 26, 1991, several days before suffering the stroke.

■ Under these circumstances, the question of whether reasonable diligence should have led Johnson to associate Parlodel with her stroke cannot be answered without examining—in a light most favorable to Johnson—the events in the weeks leading to her stroke. Johnson's medical records demonstrate that upon experiencing headaches in the days following the birth of her child, while still in the hospital, Johnson repeatedly reported her symptoms to the hospital staff. More than two weeks after giving birth—and a couple of days after she presumably finished taking Parlodel—Johnson returned to the office of the doctor who had prescribed her the drug, reporting headaches and dizziness. At no time were Johnson's reports of symptoms met with any information from her doctor or any member of the hospital staff that the problems she had been experiencing, both in and out of the hospital, might have been associated with one of the drugs that she had been prescribed. From this, a fact-finder might conclude not only that the doctors and nurses treating Johnson at Humana Audubon hospital— the hospital where she was prescribed Parlodel—were aware of the medications Johnson was taking, but also that a reasonable person in Johnson's position would *believe* they were aware of them and would advise her of any associated risks at the time she reported her symptoms. The

Kentucky Supreme Court has noted in the medical malpractice context that "the nature of the tort and the character of the injury usually require reliance on what the patient is told by the physician or surgeon." *See Wiseman,* 37 S.W.3d at 713. Here, too, in the context of exposure to an allegedly harmful prescription drug, Johnson had a "right to rely on the physician's knowledge and skill." *Id.* The question of whether Johnson's conduct fell short of reasonable diligence under those circumstances is one for the jury to decide.

The district court placed great weight on Johnson's failure to disclose to emergency medical personnel, in the immediate aftermath of her stroke, the fact that she had been taking Parlodel after the birth of her child. A jury may do the same. However, we believe that there is a genuine issue of fact as to whether such an omission by a woman who has just suffered a stroke after weeks of reporting headaches and related symptoms to the doctors who had originally prescribed her that medication means, as a matter of law, that she did not exercise reasonable diligence within the meaning of *Louisville Trust Co.*

## CONCLUSION

In products liability cases arising from exposure to allegedly harmful substances, Kentucky law requires that a plaintiff be given a reasonable opportunity to discover the causal relationship between the substance and her injury before the statute of limitations clock begins to run against her. *See Louisville Trust Co.,* 580 S.W.2d at 501. Here, Johnson's ingestion of Parlodel and her subsequent stroke did not occur simultaneously, and the surrounding circumstances made the alleged causal relationship less than obvious to a lay person. Accordingly, we conclude that the case must be remanded for determination by a jury whether Johnson, at the time of her

stroke, "in the exercise of reasonable diligence should have discovered not only that [she] ha[d] been injured but also that h[er] injury may have been caused by" her use of Parlodel. *Id.*

The judgment of the district court granting summary judgment to the defendant is, therefore, REVERSED, and the case is REMANDED for further proceedings.