RENDERED:  DECEMBER 18, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1369-MR


WAL-MART REAL ESTATE BUSINESS TRUST　　　　　APPELLANT


|  | APPEAL FROM HOPKINS CIRCUIT COURT |
|---|---|
| v. | HONORABLE JAMES C. BRANTLEY, JUDGE |
|  | ACTION NO. 15-CI-00771 |


HOPKINS COUNTY COAL, LLC;
ALLIANCE COAL, LLC;
ANDALEX RESOURCES, INC.; CONSOL ENERGY,
INC.; AND ISLAND CREEK COAL COMPANY　　　　　APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Wal-mart Real Estate Business Trust ("Wal-mart" or
"Appellant") appeals from an order of the Hopkins Circuit Court granting
summary judgment in favor of Hopkins County Coal, LLC; Alliance Coal, LLC;
Andalex Resources, Inc.; Consol Energy, Inc.; and Island Creek Coal Company

("Appellees"). Appellant contends that the trial court improperly failed to apply the discovery rule to Wal-mart's property damage claim, that the claim did not accrue until 2012 when Wal-mart first learned that underground mining had damaged its surface structures, and that Wal-mart diligently investigated the harm and should benefit from the discovery rule. For the reasons addressed below, we conclude that the general occurrence rule applies to Wal-mart's claims, and that the Hopkins Circuit Court properly concluded that the claims were time-barred. Accordingly, we affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

According to the record, coal mining began in the area of Madisonville, Kentucky, in the mid-1800's. Various companies mined coal throughout the years, including the Coil Coal Company and West Kentucky Coal Company, which mined coal seams No. 9 and No. 11. These seams continued production in the early 1960's by the Western Kentucky Coal Company, and later by Appellee Island Creek Coal Company. Coal was extracted by underground mining that resulted in voids, or "rooms," with columns of coal left in place to support the overlying ground. Mines Nos. 9 and 11 were "mined out" and ceased production in about 1972.

In 1992, Wal-Mart Stores, Inc., an affiliate of Appellant, commissioned three engineering reports and an environment report on a parcel of

property in Madisonville, Kentucky, which would later become the site of Wal-mart store #655. Mines Nos. 9 and 11 were situated some 200 feet directly below or adjacent to the surface parcel. In 1992, the engineering firm of McCoy & McCoy produced a report warning Wal-Mart Stores, Inc. of subsidence[1] in the area of the proposed construction, and referring Wal-Mart Stores, Inc. to a subsidence report prepared by the federal Office of Surface Mining. That same year, Associated Engineers, Inc. reported to Wal-Mart Stores, Inc. that while subsidence was not known to have occurred on the subject parcel, the potential for subsidence existed because the property was underlain by abandoned mine works. And in 1994, Anderson Engineering Consultants determined that while no subsidence is known to have occurred on the potential building site, mines Nos. 9 and 11 were located under the site and were extensively mined. The firm also found that subsidence had occurred on several sites within one mile of the proposed construction, including the location of a Hardee's Restaurant and the Parkway Plaza Mall. Anderson Engineering concluded that while the potential for subsidence at the proposed site was very low, it could not be precluded.

---

[1] Subsidence is any movement of the surface or subsurface soil from its natural position, including shifting, falling, and slipping soil. *Island Creek Coal Co. v. Rodgers*, 644 S.W.2d 339, 342 (Ky. App. 1982) (citation omitted).

On May 19, 1994, Wal-Mart Stores, Inc. purchased the subject parcel and began constructing a Walmart Supercenter[2] retail building on the subject parcel. The building consisted of a 204,000 square feet, open steel frame structure that included retail space, a garden center, loading area, parking lot, and retention basin. In order to construct the building, the original ground slope was cut down about 17 feet on one end of the parcel, and filled up approximately 25 feet on the other end in order to produce a level grade for the building. After construction, the Walmart Supercenter began retail operations.

In 1996, Appellant noticed cracks developing in the building's floors, parking lots, and walkways. The problems continued over the years that followed, and in 2002, Appellant engaged Wallace Engineering, Inc. ("Wallace") and Associated Engineers to investigate cracking in masonry walls and foundation settlement at the property. Wallace determined that the likely causes of the cracks were defects in the fill material placed beneath the foundation and defects in the masonry walls. Associated Engineers found that subsidence was not the probable cause of the structural damage. Rather, it believed that the most likely cause of the damage was consolidation of the fill and underlying natural ground.

---

[2] Walmart's website indicates that the business has undergone various iterations of branding, including "Wal-mart," "Wal-Mart," and "Walmart."

In 1998, Alliance Coal, LLC created a wholly owned subsidiary called Hopkins County Coal, LLC ("HCC") for the purpose of beginning new mining operations in Hopkins County, Kentucky. As a precursor to mining operations, Appellee HCC began pumping millions of gallons of water from underground, abandoned mines.

In 2008 and 2009, Appellant began to repair and remodel the Supercenter. As part of that process, extensive cracking, sidewalk displacement, and other damages were observed. Appellant engaged engineers at SITE, Inc., Wallace, and SGA Design Group to investigate the damages. On September 16, 2010, Wal-mart opened the "Possible Subsidence Remediation" project for store #655, after Wal-mart's national maintenance director received a call from Wal-mart's subsidence expert, Dr. Jerry Marino. Wal-mart's national maintenance director, Clay Moore, sent a letter on November 4, 2010, to architect Eric Miller describing what he believed were problems with store #655, stating that there was possible subsidence on the property which caused the structural damage. Ultimately, based on Dr. Marino's reports and repair estimates from contractor Dean Carlson, Wal-mart vacated store #655 and constructed a new store in Hanson, Kentucky.

On November 30, 2015, Appellant filed a complaint in Hopkins Circuit Court alleging that store #655 was damaged due to subsidence linked to

Appellees' underground mining activities. Wal-mart alleged that HCC's dewatering activities and Island Creek's creation of pillars with insufficient strength to support the overburden above the East Diamond Mine resulted in subsidence and damages to store #655. The complaint and amended complaint asserted claims of strict liability, negligence, and violations of 405 Kentucky Administrative Regulations ("KAR") 18:210. Extensive discovery followed.

On June 4, 2019, Appellees filed a motion for summary judgment alleging that Wal-mart's claims were time barred by operation of Kentucky Revised Statutes ("KRS") 413.120. Specifically, Appellees argued that Wal-mart failed to file its lawsuit within five years of the alleged subsidence or within five years of Wal-mart's belief that subsidence caused the alleged damages. Wal-mart responded in opposition, and oral arguments were conducted on July 16, 2019.

On August 12, 2019, the Hopkins Circuit Court rendered an order granting Appellees' motion for summary judgment. In support of the order, the court applied by analogy the ruling in *Fluke Corp. v. LeMaster*, 306 S.W.3d 55 (Ky. 2010), which reaffirmed the general occurrence rule that a cause of action accrues when the injury occurs. The trial court found that Wal-mart was aware as early as 1992 of the potential for subsidence problems affecting the property, and knew about cracking floors and walls in 2002. In applying the general occurrence rule centering on the date of injury, the trial court found as inapplicable the

discovery rule, which focuses on when the injured party knew or should have known that the defendant caused an injury. The court distinguished the medical malpractice case of *Wiseman v. Alliant Hospitals, Inc.*, 37 S.W.3d 709 (Ky. 2000), wherein the discovery rule was applied when the plaintiff discovered several months after her surgery that her post-surgical pain resulted from a metal, uterine probe inadvertently left in her body. In contrast to the medical instrument left in the body after surgery, the trial court found that the cause of the cracking floors and walls at store #655 was not latent, as the possibility of subsidence was known even before the store was constructed. Ultimately, the court determined that multiple instances of subsidence occurred between 2000 and 2009, that cracking walls and floors in store #655 were known to Wal-mart as early as 2002, that Wal-mart was aware in 2002 from several geotechnical reports that mine subsidence was a potential cause of the damages, and that it knew of several other subsidence occurrences within one mile of the property. This appeal followed.

## ARGUMENTS AND ANALYSIS

Appellant argues that the Hopkins Circuit Court committed reversible error in failing to apply Kentucky's discovery rule to the facts of this case, and should have allowed a jury to evaluate issues of fact related to the application of the discovery rule. While acknowledging that its claims are subject to the five-year statute of limitations set out in KRS 413.120, Appellant asserts that the

general occurrence rule addressed in *Fluke* is not applicable to the instant facts because the cause of the injury was latent and not known to Wal-mart until 2012. Appellant maintains that the discovery rule as set out in *Wiseman* applies to this and to other property damage cases, that its claims did not accrue until 2012 when it learned that the harm was caused by subsidence, and that it diligently investigated the harm caused by Appellees' underground mining and should benefit from the discovery rule. Appellant directs our attention to *Wiseman*, 37 S.W.3d at 712, which applied the discovery rule to the medical malpractice action. *Wiseman* held that the statute of limitations begins to run when the injury is discovered, or the date when it should have been discovered in the exercise of ordinary care and diligence. Appellant asserts that when applying the discovery rule, the knowledge necessary to trigger the statute requires the injured party to 1) know that he has been wronged, and 2) by whom the wrong has been committed. *Id.*

Appellant emphasizes *Wiseman's* distinction between "discovery of harm" and "discovery of injury." According to *Wiseman*, "harm" is the existence of loss resulting from any cause. *Id.* Conversely, "injury" is "the invasion of any legally protected interest of another." *Id.* (internal quotation marks omitted). "In order to trigger the statute of limitations, a plaintiff must discover the injury – the invasion of a legally protected interest." *Id.* at 713.

Appellant asserts that the "harm" in this case are the cracked walls, displaced sidewalks, and other property damage. According to Appellant, this harm was of unknown origin and it made ongoing and diligent efforts to uncover the cause. The "injury" occurred, in Appellant's opinion, in 2012 when it finally determined that subsidence resulting from underground mining caused the harm. This, it argues, was the "invasion of a legally protected interest" in the language of *Wiseman*, and triggered the running of the statutory period. Appellant analogizes the unknown and latent nature of the errant medical instrument in *Wiseman* with the unknown and latent cause of the subsidence resulting from mining operations some 200 feet below the surface. With the "injury" to store #655 being latent, and the hydrological connection between the two mines being difficult to uncover, Appellant contends that it could not have known of the injury prior to 2012 when it learned from Dr. Marino's report that the subsidence was caused by Appellees' alleged negligent mining practices. As such, it argues that under the discovery rule, Wal-mart's November 30, 2015 filing was timely and the Hopkins Circuit Court erred in failing to so rule. It seeks an opinion reversing the summary judgment and remanding the matter for further proceedings.

The primary issue before us is whether the Hopkins Circuit Court properly determined that the general occurrence rule as set out in *Fluke* applies to the facts before us or, as Appellant argues, the latent nature of the Appellees'

alleged negligent conduct requires application of the discovery rule. The general occurrence rule provides that a cause of action accrues, and the period of limitation begins to run, "where negligence and damages have both occurred." *Victory Community Bank v. Socol*, 524 S.W.3d 24, 28 (Ky. App. 2017) (citations and internal quotation marks omitted).

> The second or discovery limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered. This rule is a codification of the common law discovery rule, and often functions as a savings clause or second bite at the apple for tolling purposes.

*Id.* (citations and internal quotation marks omitted). "[T]he discovery rule is available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence, such as in cases of medical malpractice or latent injuries or illnesses." *Fluke*, 306 S.W.3d at 60 (footnote and citations omitted). In *Fluke*, the Kentucky Supreme Court reasoned as follows:

> The LeMasters do not dispute that their injuries were immediately apparent. And they were aware at the time of the explosion that Arnett tested, or should have tested, for voltage with a voltage-measuring instrument, yet, an electrical explosion occurred. So despite their statements that they had not previously heard of voltage meters malfunctioning and trusted Fluke brand products, they should have reasonably suspected that the voltage meter was not working properly and investigated this possibility. Even though the MSHA report indicated the meter was working properly, the fact that this agency saw

> fit to examine this meter makes clear that a malfunctioning meter was at least suspected as a potential cause of the explosion. And this suspicion should have reasonably prompted the LeMasters' own prompt, independent investigation of the voltage meter as a possible cause. Thus, the Court of Appeals erred by extending the discovery rule to this case.

*Id.* at 61. The dispositive question, then, is whether the offending instrumentality, *i.e.*, subsidence resulting from Appellees' alleged negligence, was immediately evident or discoverable with the exercise of reasonable diligence. We must answer this question in the affirmative.

Appellant was aware of potential subsidence as early as 1992, or some two years before store #655 began construction in 1994. A 1994 report from Anderson Engineering Consultants, Inc. stated the possibility of subsidence "cannot be precluded." Store #655 was completed in September 1995, and nine months later cracking began to appear in the drywall and tile floor. The cracking grew worse over time. Appellant did not conduct a geotechnical investigation on the property until 2002 when it hired Associated Engineers. That report failed to determine that subsidence caused the cracking, but referenced the 1994 Anderson Engineering report which found that subsidence could not be precluded. Cracking and subsidence continued, with Appellant's expert, Dr. Jerry Marino, concluding that the last subsidence event occurred in 2009. On September 16, 2010, and more than five years prior to the filing of Appellant's complaint, the design manager for

-11-

Appellant, Clay Moore, opened a project to investigate "possible subsidence remediation."

We conclude from the foregoing that the instant facts are distinguishable from those of *Wiseman*. Whereas the *Wiseman* plaintiff could not have reasonably known that the metal tip of a uterine probe was inadvertently left in her body and had migrated to her buttocks causing chronic pain and acute inflammation, the possibility of subsidence was known to Appellant and, in fact, pre-dated the construction of store #655. We find unpersuasive Appellant's argument that the cause of the subsidence was not reasonably known to it until 2012, as this was some 20 years after it was first informed of possible subsidence resulting from sub-surface mining, and 16 years after the cracking drywall and tile floors first appeared. *Arguendo*, even if the cause of the structural damage was latent and the discovery rule was properly applied, the complaint was not filed within five years of accrual, *i.e.*, when Appellant knew or reasonably should have known of the alleged nexus between Appellees' mining, the subsidence events, and the damages to store #655.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Kentucky Rules of Civil Procedure ("CR") 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). When viewing the record in a light most favorable to Appellant and resolving all doubts in its favor, the trial court correctly determined that there were no genuine issues as to any material fact and that Appellees were entitled to judgment as a matter of law.

## CONCLUSION

The alleged cause of the structural damage was not latent, and the general occurrence rule was properly applied. Even if Appellees' alleged negligence were considered latent in the same manner that the *Wiseman* Court

-13-

characterized the medical probe, Appellant's complaint was not filed within five years of when Appellant knew or reasonably should have known of the purported nexus between Appellees' activities and the damage to store #655. We find no error, and affirm the summary judgment on appeal.

GOODWINE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

John C. Whitfield
Madisonville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Griffin T. Sumner
Lexington, Kentucky

BRIEF FOR APPELLEES ISLAND
CREEK COAL COMPANY AND
CONSOL ENERGY, INC.:

Jeffrey K. Phillips
Lexington, Kentucky

ORAL ARGUMENT FOR
APPELLEES ISLAND CREEK
COAL COMPANY AND CONSOL
ENERGY, INC.:

Jeffrey K. Phillips
Lexington, Kentucky

Billy Shelton
Lexington, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEES HOPKINS
COUNTY COAL, LLC AND
ALLIANCE COAL, LLC:

P. Douglas Barr
Lexington, Kentucky