**VICTORY COMMUNITY BANK, Appellant**

v.

**Lionel SOCOL, Appellee**

**NO. 2015–CA–000005–MR**

Court of Appeals of Kentucky.

JANUARY 13, 2017; 10:00 A.M.

Rehearing Denied March 1, 2017

Discretionary Review Denied by Supreme Court August 16, 2017

MODIFIED: FEBRUARY 17, 2017; 10:00 A.M.

BRIEFS FOR APPELLANT: Scott R. Thomas, Justin Whittaker, Fort Mitchell, Kentucky

BRIEF FOR APPELLEE LIONEL SOCOL: Kent W. Seifried, Fort Mitchell, Kentucky

BEFORE: COMBS, J. LAMBERT, AND VANMETER,[1] JUDGES.

OPINION

VANMETER, JUDGE:

A civil action against a real estate appraiser must be brought within one year from "the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." KRS[2] 413.140(3). At issue is whether the Kenton Circuit Court properly determined as a matter of law the date on which Victory Community Bank reasonably should have discovered that Lionel Socol allegedly overvalued some real property securing a loan made by the bank. While we find that the trial court

erred in its determination of the date, we hold that Victory, nevertheless, failed to bring its action against Socol within the applicable time period, based on when Victory reasonably should have discovered its cause of action. We therefore affirm the summary judgment granted by the trial court.

### I. Factual and Procedural Background.

Victory is a federally-chartered bank located in Kenton County, Kentucky. Socol[3] is a certified general appraiser who practices in Kentucky and Ohio. In 2005, Amelia Real Estate Development, LLC, sought to obtain a loan from Victory, offering as collateral some real property located in Clermont County, Ohio. Victory hired Socol to appraise the property. In June 2005, he submitted a report opining that the property had a fair market value of $1,215,000. Socol's appraisal provided, "[t]he value conclusions stated herein are as of the effective date as stated in the body of the appraisal." The stated effective date was June 9, 2005. In reliance on the appraisal, Victory lent $448,000 to Amelia. Because the loan-to-value ratio was under the bank's threshold, Victory did not require Amelia to submit personal guarantees from its members.

About five years later, on December 1, 2010, Amelia defaulted on the loan. At that time, the deficiency on the loan was in the amount of approximately $479,000. In his deposition, Victory's president, Jack Kenkel, testified that by December 2010, he was concerned about Socol's appraisal, in part

---

1. Judge Laurance B. VanMeter authored this opinion prior to being elected to the Kentucky Supreme Court. Release of this opinion was delayed by administrative handling.

2. Kentucky Revised Statutes.

3. The Martin J. Horwitz Trust, designated as an appellee on this appeal, has filed a motion seeking to adopt the brief filed on behalf of Socol or, alternatively, to be dismissed as an appellee. Socol has not filed a response or objection. By separate order, we are dismissing The Martin J. Horwitz Trust as party to this appeal.

because Amelia had offered to return the deed to the property to the bank.

Q. So by that time in December of 2010, you were concerned about is [Socol's] appraisal?

A. No doubt about it. No one gives you a deed, even with the drop in real estate values, nothing goes from a million-two to where they're willing to give you a property back for $480,000 owed.

Kenkel also testified that he went to view the property, approximately around December 1, 2010,[4] and saw that it had a "for sale" sign on it. He called the agent's number listed on the sign and the agent told him the property was not worth $1.2 million "or anywhere close to it." The agent gave him some ranges of what he thought the property was worth, which Kenkel recalled were in the "$800,000, 900, seven range." Kenkel testified that the agent's comments confirmed to him that he was in trouble, and that his own observations of the property indicated various problems—no streets or developable property, and an inaccessible ravine. He testified, "[a]nd from the description of the appraisal to that ten-minute visual, I knew I was in deep [trouble]."

On December 24, Kenkel wrote to Socol: "See original appraisal. They want to give me a deed. Owe me $480,000. The appraisal indicates developed lots. Is sewer and water to the lots? [W]ithout doing a new appraisal, what would you estimate current value[?]" On January 14, 2011, Socol responded, "At the time of the appraisal in 2005, it was [my] opinion that the land was held for future sale or development. Based on new development at the time of estimate value, the holding period would be 5 to 10 years." In following up, on January 18, 2011, Victory inquired, "[d]id you see any issues with [the] original appraisal in retrospect?" In fact, Kenkel sent Socol a two-page letter, dated February 3, 2011, stating that Victory intended to foreclose on the property and anticipated "a large loss." Kenkel further expressed his skepticism that "a $1 million dollar drop in value can be attributed to changes in market conditions." Kenkel then requested Socol comment upon discrepancies between factual statements in the original appraisal and information of which Kenkel was then, as of February 3, 2011, aware. To this inquiry, Socol replied, on February 4, 2011,

[Y]ou may have misunderstood my response last month. I did not give you a definite value estimate of the property. ... I cannot review your attachment till [sic] I get my file. I am in California till [sic] February 19, 2011. It will be the end of the month before a response is possible. I do believe the value of the land in a sale would cover the mortgage amount you indicated you have. Unfortunately market conditions require several years before this happens.

Victory later hired another appraiser. According to Victory, Socol's appraised 2005 value was inflated because he deliberately withheld or misrepresented key facts about the property, relating to its zoning, drainage, and location. Victory ultimately settled with Amelia for $60,000 and title to the property, which Victory sold without recovering the outstanding deficiency.

On November 30, 2011, Victory and Socol executed a tolling agreement, which stated that "Victory has notified Socol of potential claims and/or causes of action against Socol arising out of an appraisal Socol performed for Victory on or about June 9, 2005 pertaining to ... Amelia."

---

4. In his deposition, Kenkel could not remember the exact date he viewed the property, but he agreed the date was definitely before December 24, 2010, and could have been 20 or 30 days before.

The tolling agreement suspended all applicable statutes of limitation from November 30, 2011, through Tuesday, February 28, 2012.[5]

On Friday, March 2, 2012, Victory filed a complaint against Socol in Kenton Circuit Court, alleging breach of contract, negligence, fraud, and civil conspiracy. Socol filed a motion for summary judgment based on accord and satisfaction and lack of damages. The trial court denied the motion. Socol then filed a second motion for summary judgment additionally asserting that Victory's claims were barred by the statute of limitations found in KRS 413.140(1). The trial court granted the summary judgment on that basis, and this appeal by Victory followed.

## II. Standard of Review.

CR[6] 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant," *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (internal quotations omitted). "While the Court in *Steelvest* used the word 'impossible' in describing the strict standard for summary judgment, the Supreme Court later stated that that word was 'used in a practical sense, not in an absolute sense.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001). Whether summary judgment is appropriate is a legal question involving no factual findings;

so a trial court's grant of summary judgment is reviewed de novo. *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370–71 (Ky. 2010).

## III. Issues on Appeal.

The applicable statute of limitations provides that "[a] civil action, arising out of any act or omission in rendering, or failing to render, professional services for others, whether brought in tort or contract, against a real estate appraiser holding a certificate or license issued under KRS Chapter 324A[,]" shall be brought within one year. KRS 413.140 (1)(f).

The statute further provides that a cause of action brought pursuant to this subsection "shall be deemed to accrue within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." KRS 413.140(3). The latter subsection is essentially a codification of the common law "discovery rule," which provides that "a cause of action will not accrue until the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) not only that he has been injured, but also that this injury may have been caused by the defendant's conduct." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010).

The trial court held that, but for the tolling agreement, the statutory limitations period would have expired on December 1, 2011, one year after the date of the default by Amelia. The tolling agreement extended the limitations period to February 28, 2012. The complaint was filed three days later, which the trial court concluded prevented the action from continuing.

5. Paragraph 9 of the Tolling Agreement provided, "[t]his Tolling Agreement shall expire without any action by the parties on February 28, 2012. In the absence of any extension of this Tolling Agreement, ... the suspension of

any applicable statutes of limitation shall be lifted."

6. Kentucky Rules of Civil Procedure.

Although no case law directly interprets KRS 413.140(3), we look for guidance to the general statute of limitations for professional services, KRS 413.245, which contains almost identical language, stating that such actions "shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." KRS 413.245.

The Kentucky Supreme Court has observed that KRS 413.245 "actually provides two different limitations periods: one year from the date of the 'occurrence,' and one year from the date of the actual or constructive discovery of the cause of action." *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.,* 237 S.W.3d 141, 147 (Ky. 2007) (citing *Michels v. Sklavos,* 869 S.W.2d 728, 730 (Ky. 1994)).

The "occurrence" limitation period begins to run upon the accrual of the cause of action. The accrual rule is relatively simple: A cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred. The use of the word "occurrence" in KRS 413.245 indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute.

*Id.* at 147 (internal citations and quotations omitted).

The second or "discovery" limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered. This rule is a codification of the common law discovery rule, and often functions as a "savings" clause or "second bite at the apple" for tolling purposes.

*Id.* at 148 (internal citations and quotations omitted).

In its order granting summary judgment, the trial court noted that Victory admitted that "[o]n December 1, 2010, Victory knew that it was going to be injured by Amelia, the borrower, *i.e.,* that Amelia was not going to fulfill its obligations under the Notes." Victory argued that while this date might have started the running of the limitations period as to Amelia, it did not apply to the case against Socol. The trial court disagreed, stating that Victory's argument was based upon the assumption that when the "discovery" was made, Victory knew it had a cause of action against Socol, ignoring the issue of when Victory should have known it had such a cause of action in the exercise of reasonable diligence. The trial court held that Victory should have known, or could reasonably have discovered, on the date of the default, that Socol was a potential tortfeasor and hence the limitations period as to Socol began to run on that date.

Victory argues that the trial court blurred the critical distinction between Amelia, the borrower, and Socol, the appraiser. It contends that Amelia's breach of its contract with Victory gave no signal that Socol had also breached his contract with Victory and committed allegedly tortious conduct. Victory argues that the claims against Socol are premised on different facts, have different elements and provide for different measures of damage; simply put, Amelia's default did not give rise to a reasonable inference of Socol's negligence. Victory points to evidence that after the default, it actually contacted Socol for assistance in determining whether the collateral property could be sold to pay the loan deficiency, and that they exchanged emails on that subject through January and the beginning of February 2011.

While we might agree with Victory that the default by Amelia did not necessarily put the bank on notice of Socol's misfea-

sance, the facts of this case indicate Victory was on notice that something was amiss. Specifically, Kenkel's deposition and the exchange of correspondence between Kenkel and Socol from December 2010 to early February 2011 show : (i) Amelia's offer of a deed in satisfaction of the outstanding indebtedness; (ii) Kenkel's view of the subject property in early December disclosing discrepancies between its condition and the appraisal's factual representations; (iii) Kenkel's initial December 24 inquiry to Socol as to the appraisal's reference to developed lots; (iv) Socol's response referring to "future sale or development" with a holding period of 5 to 10 years; (v) Kenkel's follow up on January 18, 2011 as to whether Socol saw "any issues with [the] original appraisal in retrospect[ ]"; and (vi) Kenkel's February 3, 2011, letter detailing problems with the appraisal's factual basis. Certainly by that point, February 3, 2011, Socol's role was sufficiently known to Victory. The bank then "had a duty to exercise reasonable diligence to discover its cause of action within the time prescribed by the statute of limitations." *Bridgefield Cas. Ins. Co. v. Yamaha Motor Mfg. Corp. of Am.*, 385 S.W.3d 430, 434 (Ky. App. 2012). "Its failure to do so does not lend to application of the discovery rule or the equitable estoppel doctrine to toll the statute of limitations in this instance." *Id.*

In this case, the statute of limitations began to run no later than February 3, 2011, the date of Kenkel's detailed inquiry about problems with the original appraisal. The record clearly demonstrates that Victory and Socol executed a tolling agreement which was in effect until February 28, 2012. Unfortunately, Victory filed its action against Socol on March 2, 2012, outside the period provided by the tolling agreement. *See Rumpel v. Rumpel*, 438 S.W.3d 354, 365 (Ky. 2014) (noting that "an appellate court may affirm a judgment on a ground other than that relied on by the trial court, provided that the alternative ground is supported by the record[ ]").

Victory argues that the question of when the bank should reasonably have discovered Socol's alleged misfeasance is a matter for the jury. But "where the pertinent facts are not in dispute, the validity of the defense of the statute of limitations can and should be determined by the court as a matter of law." *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 572–73 (Ky. 2009) (internal citations omitted). "[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482. "A party's subjective beliefs about the nature of the evidence is not the sort of affirmative proof required to avoid summary judgment." *Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. App. 2007). Victory can point to no genuine factual dispute which would cast doubt on the conclusion that the bank knew well before February 28, 2011, that Socol's appraisal was seriously defective, and was therefore put on notice of Socol's role as a potential wrongdoer. " 'An injured party has an affirmative duty to use diligence in discovering the cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of this entire claim.' " *Fluke*, 306 S.W.3d at 64 (quoting *Hazel v. General Motors Corp.*, 863 F.Supp. 435, 440 (W.D. Ky. 1994)).

For the foregoing reasons, the Kenton Circuit Court order granting summary judgment and dismissing the complaint with prejudice is affirmed.

ALL CONCUR.